113 N.J. Super. 161 (1971)
273 A.2d 366
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD P. NUNN AND JOHN NUNN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1970.
Decided January 25, 1971.
*162 Before Judges CONFORD, KOLOVSKY and CARTON.
*163 Mr. Alfred A. Faxon argued the cause for appellants (Mr. Cornelius P. Sullivan, assigned counsel).
Mr. Alfred M. Bitting, Assistant Prosecutor, argued the cause for respondent (Mr. Norman Shabel, Assistant Prosecutor, on the brief; Mr. Dominick J. Ferrelli, Burlington County Prosecutor, attorney).
The opinion of the court was delivered by CARTON, J.A.D.
The brothers Nunn appeal their convictions for carnal abuse of a 14-year-old girl. The State's proofs tended to show that the offenses occurred in defendants' automobile sometime after 2 A.M. on November 7, 1968 in a field behind the Nunn home.
The indictment charged defendants with having committed the offenses on or about the 7th day of November 1968. Defendants invoked no discovery proceedings to require the State to specify the time the offenses occurred. On the other hand, the State duly served on each defendant a demand for particulars as to any alibi defense. Neither demand was ever answered.
The sole issue involved is the propriety of the exclusion of certain testimony supporting defendants' alibi.
In their defense, defendants admitted that the victim had been riding in the car with them earlier in the evening, but claimed that they had left her by about 11 P.M. and sat drinking beer in their car in back of their home until about 11:30 P.M. when they went to bed. Defendants now argue that it was reversible error for the trial court to exclude proffered testimony of the mother and sister of defendants to the effect that the brothers were observed going upstairs to bed about 11:30 P.M. on November 6.
At the outset of the trial the prosecutor learned for the first time that defendants intended to call their mother and sister to corroborate their claim that they had come into the house and gone to bed at 11:30 P.M. The State moved to exclude this proposed alibi testimony on the ground that *164 defendant had not complied with R.R. 3:5-9 (now R. 3:11-1) after being duly served with demand for particulars. The motion to exclude this testimony was granted. However, the mother and sister were permitted to testify that they had gone to bed at 11:30 P.M. and at that time knew the defendants to be present on the premises. At one point in her testimony the mother stated that she was still in the living room lying on the couch when her son Richard came into the house and went to bed. An objection to the question which elicited that information was sustained after she gave her reply. However, the jury was not told to disregard the answer.
Defendants contend that the proposed testimony of the two witnesses was not evidence of alibi but circumstantial evidence not encompassed by the rule. More precisely, defendants' argument is that they were not obliged to specify witnesses who had only circumstantial knowledge of defendants' whereabouts at the moment of the commission of the offense.
In State v. Baldwin, 47 N.J. 379, 389-390 (1966), cert. den. 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966), the court alluded to but left unanswered the question of the applicability of the notice requirement to circumstantial evidence concerning alibi. Defendants' position finds support in State v. Rogers, 30 N.J. Super. 239 (Cty. Ct. 1954). In concluding that the rule is not applicable, that court noted that "[t]he State could not comply with defendant's demand without giving him a list of all its witnesses, and in relation to every aspect of its circumstantial case." Id. at 240.
Rogers was decided before the advent of extensive mutual discovery in criminal cases (see R.R. 3:5-11 then in force, replaced by R.R. 3:5-11 (now R. 3:13), adopted September 26, 1967) and without the benefit of judicial decisions expanding the limits of criminal discovery. (e.g., State v. Montague, 55 N.J. 387 (1970); Jones v. Superior Court, 58 Cal.2d 56, 22 Cal. Rptr. 879, 372 P.2d 919 (Sup. Ct. 1962). In view of the present state of the law as to discovery *165 in criminal cases, a contrary result from that expressed in Rogers is compelled.
Mutual discovery procedures are not an innovation. New Jersey first adopted the alibi notice requirement in the form of a statute in 1934 (R.S. 2:190-7). This jurisdiction, as did most others, strictly construed the provisions of the act as being in derogation of the common law. State v. Wiedenmayer, 128 N.J.L. 239 (Sup. Ct. 1942). As the desirability of reciprocal discovery was realized, this and other jurisdictions expanded and modernized the available procedures.
The constitutional propriety of rules or statutes which require a defendant to supply the prosecution with the particulars of a proposed alibi can no longer be questioned. Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); State v. Angeleri, 51 N.J. 382 (1968), cert. den. 393 U.S. 951, 89 S.Ct. 372, 21 L.Ed.2d 362 (1968). The underlying purpose of such a notice requirement and its consonance with the requirements of due process in a criminal trial find expression in the following quotation from Williams:
We need not linger over the suggestion that the discovery permitted the State against petitioner in this case deprived him of "due process" or a "fair trial." Florida law provides for liberal discovery by the defendant against the State, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant. Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh hour defense is both obvious and legitimate. Reflecting this interest, notice-of-alibi provisions, dating at least from 1927, are now in existence in a substantial number of States. The adversary system of trial is hardly an end to itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence. [at 90 S.Ct. at 1896, 26 L.Ed.2d 450]
*166 In the absence of a pretrial notice requirement, the Constitution would not bar the granting of a continuance on the ground of surprise if a previously unknown alibi witness was called. In Williams the Supreme Court went on to say that if utilizing a continuance was permissible under the Constitution, "then surely the same result may be accomplished through pretrial discovery * * *."
Nothing in the Fifth Amendment privilege entitled a defendant, as a matter of constitutional right, to await the end of the State's case before announcing the nature of his defense.
The rationale enunciated in Williams exemplifies "the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." Dennis v. United States, 384 U.S. 855, 870-871, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966); see also State v. Montague, supra. No defendant has any constitutional guarantee of "a right so to defend as to deny the State a chance to check the truth of his position." State v. Angeleri, supra, 51 N.J. at 385. Simply put, the notice requirement "only compelled [a defendant] to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information which [he] from the beginning planned to divulge at trial." Williams v. Florida, supra, 90 S.Ct. at 1898, 26 L.Ed.2d at 452. An accused gives up nothing by enforcement of the notice requirement while the judicial system is afforded a better opportunity to determine the ultimate truth of the charge.
The question remains as to whether circumstantial evidence of alibi can fairly be said to come within the confines of the notice requirement. R. 3:11-1 reads:
If a defendant intends to rely in any way on an alibi, he shall on written demand of the prosecuting attorney and within 10 days thereafter, furnish a written bill of particulars, signed by him, stating the specific place or places at which he claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi. Within 10 days after receipt of such bill of particulars from the defendant, *167 the prosecuting attorney shall, on written demand, furnish the defendant or his attorney with a written bill of particulars stating the names and addresses of the witnesses upon whom the State intends to rely to establish defendant's presence at the scene of the alleged offense. The trial court may order the amendment or amplification of such particulars, or of the time of their service, as the interest of justice requires. [Emphasis added]
"Alibi" literally means "elsewhere; in another place." State v. Mucci, 25 N.J. 423, 431 (1957). In Mucci the court said: "The defense of alibi has its evidential efficacy in the physical impossibility of the accused's guilt; and where the offered evidence does not meet this standard, the defense of alibi is not sustained."
Our courts have recognized that proof designed to show alibi is not an offer of an affirmative issue advanced by the defense, but simply the showing of facts inconsistent with an essential element of the criminal charge. This concept was cogently expressed in State v. Garvin, 44 N.J. 268 (1965):
Alibi is not a separate defense. It is part and parcel of a direct denial of the State's charge whenever the defendant's physical presence at a given time and place is a critical part of the prosecution's case. [at 278]
R.R. 3:5-9 (now R. 3:11) was adopted, as Chief Justice Weintraub further points out in Garvin,
* * * not on the thesis that alibi is a separate defense as distinguished from a denial of a part of the case the State must prove, but rather to avoid surprise at trial by the sudden introduction of a factual claim which cannot be investigated unless the trial is recessed to that end.
Considering the language of the rule, the essence of "alibi" itself and the fact that the notice requirement in no way invades the protection afforded a defendant, we conclude that the notice requirement is sufficiently broad so as to include witnesses circumstantially corroborative of alibi. The *168 rule in plain terms warns an accused that if he "intends to rely in any way on an alibi, he shall * * * furnish a written bill of particulars * * * stating the specific place or places at which he claims to have been * * * and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi."
Whether the testimony of the proposed witness shows directly that a defendant was not physically present at the precise time and place of the alleged offense, or does so only inferentially, its purposes and objectives are the same. The difference is the weight and degree of persuasiveness attributed to that testimony by the jury. There is no less reliance by defendant on such testimony nor less need for notice by the State that it will be offered.
Our conclusion is fortified by the recent extensions of reciprocal discovery in criminal prosecutions in both the form of court rules (see R. 3:13) and judicial decision (see State v. Montague, supra; see also Jones v. Superior Court, supra; People v. Damon, 24 N.Y.2d 256, 299 N.Y.S.2d 830, 247 N.E.2d 651 (Ct. App. 1969)).
The omission of the exact time of the offense in the indictment should not bar the applicability of a notice requirement since ample discovery procedures exist through which such information is readily obtainable. We conclude, therefore, that the proffered testimony is within the notice requirement of R. 3:11 and subject to the sanction of R. 3:11-2.
Defendants argue that even if the trial court was empowered to order the exclusion of the testimony of defendants' mother and sister, it abused its discretion in doing so under the circumstances of this case.
The defense knew from the outset what the State's position was as to the time and place of the offense charged. If it be assumed that counsel did not know of the alibi witnesses so as to allow a timely compliance with the State's demand, this circumstance does not excuse the failure to give any notice at all. Defense counsel was aware of these two *169 witnesses at least one week prior to trial but made no attempt to notify the prosecutor.
Although the procedure of adjournment to allow the State the opportunity to investigate the proposed witnesses might have been followed, State v. Garvin, supra, 44 N.J. at 272, no request for an adjournment was made.
We conclude that the action of the trial court was not so clearly unreasonable in the light of the surrounding circumstances as to warrant interference on the ground of an abuse of discretion. Some evidence supporting the alibi was before the jury. Although the witnesses were precluded from specifically testifying that the brothers went to bed at 11:30 P.M., evidence of that fact came into the case by clear inference. We see no prejudice to defendants due to the formal exclusion of this particular testimony.
Affirmed.