Mims HACKETT, Petitioner,

v.

Robert E. MULCAHY, and the Attorney General of the State of New Jersey, Respondents.

Civ. A. No. 78-2529.

United States District Court,
D. New Jersey.

July 31, 1980.

---

John F. McMahon, Federal Public Defender, by David A. Ruhnke, Asst. Federal Public Defender, Newark, N. J., for petitioner.

Donald S. Coburn, Essex County Prosecutor, by John S. Redden and Gage Andretta, Asst. Essex County Prosecutors, Newark, N. J., for respondents.

## OPINION

STERN, District Judge.

In this petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, this Court must address an issue which the Supreme Court has twice declined to decide [1]

---

1. *Wardius v. Oregon*, 412 U.S. 470, 472 n.4, 93 S.Ct. 2208, 2210 n.4, 37 L.Ed.2d 82 (1973); *Williams v. Florida*, 399 U.S. 78, 83 n.14, 90 S.Ct. 1893, 1896 n.14, 26 L.Ed.2d 446 (1970).

—whether a notice of alibi statute may be enforced by the exclusion of potentially exculpatory evidence. Petitioner Mims Hackett was convicted of kidnapping in New Jersey state court on November 10, 1976, and received a minimum sentence of thirty years. At trial, petitioner denied any involvement in the kidnapping. He testified that he was at home when the incident occurred and that two individuals were with him at the time. The trial judge refused to permit these individuals to testify, however, because petitioner's counsel had failed to comply strictly with New Jersey's notice of alibi rule, N.J. Court Rule 3:11–1, which requires a defendant to give the prosecution pretrial notice of the details of any alibi defense. We hold that, under the circumstances of this case, the preclusion sanction violated the petitioner's constitutional right to call witnesses in his own defense.

## I. FACTS AND PROCEDURAL HISTORY

In late August 1975 Mims Hackett's home in Orange, New Jersey, was burglarized. Hackett asked a number of people in his neighborhood if they had seen anyone attempting to sell items taken from his house. On August 29, eighteen year-old Larry Moss, apparently one of the people Hackett had questioned, contacted Orange police and claimed that Hackett and two other men had abducted him from a street corner in Orange, assaulted him, and left him unconscious about a mile away. Petitioner was charged with four crimes in connection with this incident: atrocious assault and battery, kidnapping, and two counts of threatening to take the life of another, in violation of N.J.Rev.Stat. §§ 2A:90–1,

2A:118–1, and 2A:113–8. Indictment No. 3137–75 (May 4, 1976).

Petitioner pleaded not guilty to these charges on May 24, 1976. At that time, pursuant to N.J. Court Rule 3:11–1, the State furnished him with a bill of particulars requesting notice of any alibi defense. Rule 3:11–1 requires the defendant to answer in ten days, giving the location where he claimed to be at the time of the crime and the names and addresses of the witnesses who would testify that he was there.[2] Twenty-five days later, on June 18, petitioner's counsel sent the State a letter indicating that the defense would present an alibi defense, and on July 7, counsel sent another letter listing the names of five potential alibi witnesses. Defense counsel's notice of alibi was not only untimely; it was also deficient, in that it failed to include the place where petitioner claimed to be when the crime occurred. The State at no time objected to this defect, and it was never corrected.

Trial commenced four months later, on November 1, 1976, without any motion by the prosecution to preclude an alibi defense. In its opening statement the State alleged that Hackett, after his home had been burglarized, decided "to take the law into his own hands," Tr. of Nov. 1, at 41, and, with two confederates, kidnapped one of the people who he believed was involved in the burglary. Defense counsel, in his opening statement, did not dispute that Hackett's home had been broken into or that the kidnapping had occurred. He told the jury, however, that Hackett was at home at the time of the kidnapping, and that he would call a witness to support Hackett's alibi. Tr. of Nov. 1, at 46. The State made no objection to the defendant's promise to call

---

**2.** N.J. Court Rule 3:11–1 provides:

If a defendant intends to rely in any way on an alibi, he shall, on written demand of the prosecuting attorney and within 10 days thereafter, furnish a written bill of particulars, signed by him, stating the specific place or places at which he claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi. Within 10 days after receipt of such bill of particulars from the defendant, the prosecuting attorney shall, on written demand, furnish the defendant or his attorney with a written bill of particulars stating the names and addresses of the witnesses upon whom the State intends to rely to establish defendant's presence at the scene of the alleged offense. The trial court may order the amendment or amplification of such particulars, or of the time of their service, as the interest of justice requires.

alibi witnesses on his behalf. Indeed, the prosecutor expressed indifference as to whether such witnesses testified or not.

The State relied primarily on the testimony of the victim and two other witnesses to the abduction. The victim, Larry Moss, testified that he was talking with his brother Anthony, cousin Brian Watkins, and several other friends at about 4:00 P.M. on August 29, 1975, when two men grabbed him and dragged him into the back seat of a parked station wagon. Anthony Moss and Watkins attempted to rescue him but turned away when a third man, occupying the driver's seat, threatened them with a pistol.[3] The car then sped away. Larry Moss identified petitioner as the driver, and testified that he recognized petitioner as the same man who had approached him a few days earlier, told him about the burglary of his house, and asked if anyone had tried to sell him a television or calculator.

Moss testified that petitioner left the car after it had gone a few blocks, intending to report it stolen, and agreed to meet the two other men at 4:00 P.M. outside a bar in Newark. Petitioner drove a second car to the meeting spot, not arriving until about 5:30. Petitioner, Moss, and the other two men then entered the second car. Moss stated that petitioner, presumably seeking information about the burglary of his house, told Moss: "You are going to tell me what I want to know or I am going to kill you." Tr. of Nov. 3, at 15. Moss "finally decided to give a couple names . . . so no harm wouldn't [sic] come to me." *Id.* He further testified that, as the men traveled from Newark into East Orange, petitioner struck him in the head with a gun, knocking him unconscious. He woke up lying on a street in East Orange, about a mile from where he was abducted.

Anthony Moss and Brian Watkins also identified petitioner as the driver of the car.[4] A fourth witness, Michael Daly, saw only two men and could not identify petitioner as one of them. However, Daly reported the license number of the automobile to the police; a check revealed that the car was registered to petitioner.[5]

Detective John Farley of the Orange Police Department gave the only other evidence against petitioner. Farley testified that when petitioner's counsel, Peter Vitanzo,[6] arrived at police headquarters on the night of the kidnapping, Farley informed him that petitioner was charged with kidnapping. Farley read the kidnapping statute to Vitanzo in petitioner's presence. When Farley reached the portion of the statute dealing with moving an individual from one point to another point in the state, Vitanzo asked how far the victim in this case had been transported, and was told that the victim had been picked up in Orange and dropped off in East Orange, about a mile away. Farley testified that petitioner then interrupted, declaring: "It was no mile, we dropped him off maybe a couple of blocks into East Orange." Tr. of Nov. 4, at 114.

The first defense witness was Vitanzo, who was called to rebut Farley's testimony. Vitanzo testified that he was indeed present when Farley advised petitioner of the charges but that Hackett had made no such statement, instead remaining silent as Vitanzo had instructed. On cross-examination, in an effort to undermine Vitanzo's credibility, the prosecution brought out the fact that he had prepared the defective notice of alibi and questioned him extensively on it, thereby further reinforcing the jury's perceptions that the defense would rely on alibi.

Petitioner took the stand and admitted that his house had been burglarized in late August 1975 and that he had questioned

---

**3.** Counts three and four of the indictment charged petitioner with threatening the lives of Watkins and Anthony Moss respectively.

**4.** The two other men who participated in the abduction have never been identified.

**5.** Patrolman Ralph Taliercio of the Orange Police Department testified that he received two

phone calls, one from Daly and the other from a Mr. Facola, reporting the incident and license number of the car. Facola did not testify at trial.

**6.** Vitanzo's associate, Joseph Ferrante, was petitioner's counsel at trial.

people in the neighborhood about it.[7] He also admitted that his car may have been used in the abduction. He testified that on August 28 he had loaned his car to a man named Clarence Williams, whom he asked to "look around in Orange in general and just see and hear what [he could] find out" about the burglary. Tr. of Nov. 5, at 83. Petitioner learned of Williams through a friend who described Williams as a "street guy" who might be able to find out who committed the burglary. Tr. of Nov. 5, at 82. Petitioner said that he had asked Williams to leave the car at a nearby service station on August 29. At about 4:30 P.M., he testified, he called the station. When he was told that his car was not there he reported it stolen. Petitioner was unable to locate Williams to testify at trial.

Petitioner testified that he had been at home when the abduction allegedly occurred. He further stated that two people, Jefferson Brown and William Blake, dropped by at various times that afternoon. In support of his alibi defense, petitioner called Brown to testify.[8] Then, for the first time in the history of these proceedings, the state objected because of the defective notice of alibi provided by petitioner's counsel. The trial judge, despite the references to alibi testimony which the jury had heard during petitioner's opening statement, petitioner's testimony, and Vitanzo's cross-examination, sustained the objection and indicated that he would preclude any further alibi testimony pursuant to N.J. Court Rule 3:11–2.[9]

On November 10, 1976, the jury convicted petitioner of simple assault and battery and of kidnapping.[10] He was sentenced to a term of thirty to thirty-one years on the kidnapping count, the minimum term permitted by statute,[11] and a six-month concurrent term on the simple assault and battery conviction.

Shortly after sentencing, two of the State's three identification witnesses—Larry and Anthony Moss—recanted their trial testimony.[12] Petitioner moved for a new trial, and the trial court considered the recantations at an evidentiary hearing conducted in August 1977. At the hearing Larry Moss testified that Detective Farley planned to frame petitioner for a kidnapping. Farley asked Moss to submit to an abduction and identify petitioner as a participant. Anthony Moss testified that he could not identify petitioner as one of the kidnappers and that his trial testimony was the result of his brother's influence. The trial judge found that the "ring of truth is totally absent in the recantation of both Larry Moss and Anthony Moss," Tr. of Aug. 17, 1977, at 103, and denied the motion for a new trial.

On June 19, 1978, the Appellate Division affirmed petitioner's conviction and sentence.[13] A petition for certification, filed with the New Jersey Supreme Court on

---

**7.** He did not specifically recall, however, speaking with Larry Moss.

**8.** Petitioner states that he also intended to call Blake as an alibi witness.

**9.** N.J. Court Rule 3:11–2 provides:
   If such bill of particulars is not furnished as required, the court may refuse to allow the party in default to present witnesses at trial as to defendant's absence from or presence at the scene of the alleged offense, or make such other order or grant such adjournment as the interest of justice requires.

**10.** He was acquitted on the charges of threatening the lives of Brian Watkins and Anthony Moss.

**11.** N.J.Rev.Stat. 2A:118–1. That statute was repealed by L.1978, c. 95, N.J.Rev.Stat. § 2C:98–2, eff. Sept. 1, 1979. The mandatory penalty for first degree kidnapping is now fifteen years. N.J.Rev.Stat. § 2C:13–1.

**12.** Larry Moss gave sworn statements on February 17, March 18, and April 14, 1977, repudiating his trial testimony. This was not the first time Moss had changed his story. Soon after the kidnapping Moss had accompanied petitioner to Vitanzo's office and signed a statement exonerating petitioner of any involvement in the kidnapping. At trial Moss testified that he was pressured by petitioner into signing the statement.

**13.** Petitioner filed a notice of appeal on January 4, 1977. Following the recantation of the Moss brothers, the Appellate Division remanded the case to allow petitioner to move for a new trial. After that motion was denied, petitioner filed an amended notice of appeal on August 19, 1977.

July 3, 1978, was denied on September 19, 1978.

On February 22, 1979, the Governor of New Jersey commuted petitioner's sentence to a minimum of two and a maximum of three years. Petitioner was paroled on July 17, 1979. On October 19, 1978, petitioner filed this petition for a Writ of Habeas Corpus,[14] contending, *inter alia*, that his constitutional right to due process was violated by the exclusion of alibi evidence under the circumstances of this case.[15]

## II. EXHAUSTION OF REMEDIES

Petitioner is required to exhaust available state remedies prior to filing a petition for a Writ of Habeas Corpus. 28 U.S.C. § 2254(b). The test for exhaustion is "whether the 'method of analysis' asserted in the federal courts was readily available to the state court." *Bisaccia v. Attorney General of the State of New Jersey*, 623 F.2d 307, 310 (3rd Cir. 1980); *see also Zicarelli v. Gray*, 543 F.2d 466, 472 (3rd Cir. 1976) (the exhaustion requirement "ensure[s] that the state system was granted a fair opportunity to confront arguments that are propounded to the federal habeas courts"). Petitioner need not present the identical legal arguments to the state and federal courts, but he must provide the state court with "an opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Picard v. Con-*

nor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971).

Respondent contends that the issues raised in the petition, including petitioner's contention that the exclusion of potential alibi testimony violated his federal constitutional rights, have not been fairly presented to the state courts. We disagree. Although neither the Appellate Division opinion confirming petitioner's conviction nor the New Jersey Supreme Court's order denying certification discusses any claim arising out of the United States Constitution, and the briefs filed in the state court proceedings—by both petitioner and the State—do not couch any argument in federal constitutional terms,[16] the "method of analysis" asserted here was readily available to the state court.

Petitioner's appeal raised four grounds for reversal: (1) the trial court erred in denying his motion for a new trial; (2) the trial court erred in excluding the testimony of potential alibi witnesses; (3) the trial court erred in permitting prejudicial references by the prosecutor during cross-examination of petitioner and in summation; and (4) the 30-year minimum sentence on the kidnapping conviction was "overpunitive." The briefs filed in the Appellate Division by both parties dealt extensively with whether preclusion was proper under the New Jersey Court Rules and governing case law. Petitioner contended that the purpose of the notice of alibi rule would be served by lesser sanctions [17] and that the

---

14. The Court notes that petitioner's parole status satisfies the "custody" requirement of 28 U.S.C. § 2241(c)(3). *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

15. Petitioner also asserts that the trial court's refusal to order a new trial after the victim and a second eyewitness recanted their trial testimony, and prejudicial remarks made by the prosecutor during cross-examination and summation violated his right to due process. In addition, he contends that he did not receive effective assistance of counsel. Petitioner has withdrawn a Fourteenth Amendment challenge to the validity of his thirty to thirty-one year sentence because of the Commutation Order.

In view of our holding that, under the circumstances of this case, the preclusion of alibi testimony violated petitioner's Fourteenth Amendment right to due process, we need not reach petitioner's other contentions.

16. Petitioner can hardly be faulted for failing to challenge the constitutionality of the sanctions provision, N.J. Court Rule 3:11–2, in state court, in view of previous state court decisions rejecting similar challenges. *State v. Francis*, 128 N.J.Super. 346, 350, 320 A.2d 173, 175 (App.Div.1974); *State v. Nunn*, 113 N.J.Super. 161, 273 A.2d 366 (App.Div.1971).

17. The statute was intended "to do away with the existing unfairness in criminal trials of a surprise alibi and at the same time to give defendant equivalent information as to the State's case." *State v. Baldwin*, 47 N.J. 379, 388, 221 A.2d 199, 204, *cert. denied*, 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966). Petitioner argued on appeal that a continuance would have served this purpose.

remedy for failure to comply with Rule 3:11–1, although in the discretion of the trial judge, must be a remedy "the interest of justice requires." The opinion issued by the Appellate Division upheld the trial judge's preclusion sanction as an appropriate exercise of discretion under N.J. Court Rule 3:11–2.

In his petition for certification Hackett contended that: "the refusal of the trial judge to allow the testimony of an alibi witness requires that in the interest of justice, the Supreme Court review the entire matter." Petitioner argued that the trial court erred in excluding potential alibi testimony because "the trial judge's actions were an abuse of discretion and was [sic] not consistent with the interest of justice," citing Rule 3:11–2. The petition urged that certification should be granted because "the cumulative effect" of the trial court's errors, including its exclusion of alibi witnesses, violated "principles of fundamental fairness."

The method of analysis used by the state courts to determine, in the first instance, the appropriateness of the preclusion sanction, and, on appeal, whether preclusion constituted an abuse of discretion, is the same method this Court must use to evaluate the constitutional claim. The state courts considered the nature of the defect in the notice of alibi, the circumstances under which the prosecution objected to the testimony of potential alibi witnesses, and the reasons for the trial judge's imposition of the preclusion sanction, and then held that the preclusion sanction did not constitute an abuse of discretion. It is inconceivable that in finding no "abuse of discretion" they did not implicitly hold that preclusion did not violate petitioner's right to due process of law.

The exercise of our jurisdiction therefore will not impede on the principles of comity which underlie the exhaustion doctrine. *See Picard v. Connor, supra,* 404 U.S. at 275, 92 S.Ct. at 512. Accordingly, we hold that, although petitioner failed to place a federal label on claims presented to the state courts, he did fully raise the issue of the fairness, under standards of due process, of precluding his witnesses. Therefore, he has exhausted available state remedies as required by section 2254(b).[18]

### III. THE MERITS

The right to present witnesses in one's defense is a fundamental right guaranteed by the Sixth Amendment and made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Any improper abridgement of so fundamental a right— the very right to defend oneself—converts the trial into a charade. As the Supreme Court stated in *Washington v. Texas*:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. at 19, 87 S.Ct. at 1923.

Although the state may not prohibit the exercise of this right, it clearly may condition it on reasonable rules designed to further legitimate state interests. The Supreme Court has recognized that the State

18. We reject respondent's suggestion that we adopt the *Galtieri* doctrine, *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir. 1978), that "mixed" petitions, containing both exhausted and unexhausted claims, should be dismissed in their entirety. *See also Gonzales v. Stone,* 546 F.2d 807 (9th Cir. 1976). Therefore, it is unnecessary to determine whether petitioner has exhausted available state remedies on his other claims. *See United States ex rel. Trantino v. Hatrack,* 563 F.2d 86, 96 n.20 (3rd Cir. 1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978) (court need not decide whether to follow *Galtieri* doctrine but notes "we have yet to be persuaded of its correctness").

has a legitimate interest in preventing a criminal defendant from concocting a last-minute alibi,[19] and has upheld the constitutionality of a notice of alibi statute which provides the defendant with reciprocal discovery rights. *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973); *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). It has expressly reserved, however, the question presented here—whether the enforcement of such a statute by the exclusion of testimony violates the defendant's right to compulsory process. *Wardius v. Oregon, supra*, 412 U.S. at 472 n.4, 93 S.Ct. at 2210 n.4; *Williams v. Florida, supra*, 399 U.S. at 83 n.14, 90 S.Ct. at 1896 n.14.

■ It is clear that a defendant may waive even a fundamental right such as the right to compulsory process. However, such a waiver may not be implied lightly. The test for determining whether there has been an intelligent waiver was set forth in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938): "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Mere technical failure to comply does not necessarily constitute a waiver. Even wilful noncompliance by an attorney which may not be attributed to the client does not constitute a waiver by the defendant.[20] Where a defendant has done nothing more than employ counsel—entrusting his freedom into the hands of one licensed by the court as competent to represent him—neither the error nor the misconduct of *counsel* constitutes a waiver by the defendant of his fundamental rights.

[9] The testimony of a defense witness may not be precluded because of defense counsel's failure to comply with court rules, unless the record reveals some complicity on the part of the defendant. For example, in *United States v. Barron*, 575 F.2d 752 (9th Cir. 1978), the court upheld the preclusion of potential alibi testimony based on the defendant's intentional failure to disclose the existence of his witnesses until after the start of trial. In that case the defendant refused to confide in his court-appointed attorney, who had expressly asked him for the names of alibi witnesses. *See also Ronson v. Commissioner of Correction*, 604 F.2d 176 (2nd Cir. 1979) (preclusion of witnesses who would support insanity defense not justified absent showing of extreme prejudice by the prosecution); *United States v. White*, 583 F.2d 899 (6th Cir. 1978) (preclusion of alibi witness upheld where defendant did not disclose existence of witness until close of evidence because, he contended, he had not been able to locate the witness previously); *United States v. Boatwright*, 425 F.Supp. 747 (E.D.Pa.1977) (trial judge precluded testimony of alibi witness where defendant did not disclose existence of witness, despite appropriate requests by counsel, until five days after the start of trial).[21]

*United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), a case upon which respondent heavily relies, is inapposite here. In that case defendant hired an investigator to interview the prosecution's identification witness. Defendant used a statement furnished by the investigator to impeach the credibility of the identification witness. The trial judge did not require that the defendant turn the state-

---

**19.** The notice of alibi rule may also serve the State's interest in the orderly administration of justice, by preventing unnecessary continuances which may delay a trial. However, the New Jersey courts have recognized only the State's interest in discouraging false testimony. *See, e. g., State v. Baldwin*, 47 N.J. 379, 388, 221 A.2d 199, 204, *cert. denied*, 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966); *State v. Garvin*, 44 N.J. 268, 272–73, 208 A.2d 402, 404 (1965).

**20.** It may, however, subject counsel to appropriate sanctions.

**21.** An analogous situation arises when a defense witness violates a sequestration order by remaining in the courtroom throughout the trial. Several courts have held that such a witness may not be precluded from testifying, although violation of the court order may be used to impeach his or her credibility. The proper recourse, these cases have held, is a contempt proceeding against the witness. *State v. Leong*, 51 Haw. 581, 583–86, 465 P.2d 560, 562–63 (1970); *People v. Duane*, 21 Cal.2d 71, 80, 130 P.2d 123, 128 (1942).

ment over to the prosecution at that time, but noted that the statement would have to be turned over if the investigator were to testify. When the investigator was called by the defendant to testify, the judge reiterated that defendant must permit the prosecution to examine the investigator's prior statement for potential inconsistencies, because it bore directly on the central issue at trial—the credibility of the identification witness. Defendant, aware of his choice between nondisclosure of the statement and testimony of the investigator, elected not to disclose the statement. The Supreme Court held that the trial court could require the defendant to make such an election, stating:

> The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth.

*Id.* at 241, 95 S.Ct. at 2171.

On the basis of this record the Court can find no complicity by the petitioner in the highly technical failure of his lawyer to comply with all the provisions of the notice of alibi rule. Nor do we find any other fact which would permit us to infer that petitioner had waived his fundamental right to call witnesses in his favor.

At petitioner's arraignment on May 24, 1976, the State requested notice of any alibi on which petitioner intended to rely. Petitioner's counsel made no response until June 18, 1976, when he advised the State by letter that petitioner intended to rely on an alibi defense. No further information was requested. On July 7, 1976, however, petitioner's counsel provided the State with the names of five potential alibi witnesses. The list included Jefferson Brown and William Blake, who petitioner contends were

with him at the time the abduction occurred; Clarence Williams, to whom petitioner contends he loaned his car; Willie Campbell, who referred petitioner to Williams; and Booker Campbell, who apparently was also aware that petitioner had been referred to Clarence Williams. The addresses of each of those individuals except Clarence Williams was also provided. The location of petitioner at the time of the abduction was not provided. Trial commenced on November 1, almost four months after petitioner provided the State with the names of potential alibi witnesses. In his opening statement petitioner's counsel promised the jury that he would call witnesses to show that petitioner was at his home when the crime was allegedly committed. The State did not object. After counsel delivered their opening statements, a discussion occurred out of the presence of the jury concerning potential alibi witnesses. Defense counsel again noted his intention to call at least two alibi witnesses. Not only did the prosecutor fail to object, he stated instead that he was "not too concerned with alibi witnesses." He also noted on the record that he had had the names of the alibi witnesses since July but had not talked to them. He requested only that the missing address of Clarence Williams be supplied; defense counsel replied that he himself had been unable to locate Williams. Tr. of Nov. 1, at 68–71.

On the third day of the trial, Peter Vitanzo, petitioner's pretrial counsel and the individual responsible for the defective notice, testified for petitioner as a fact witness.[22] During cross-examination of Vitanzo, the prosecution brought to the jury's attention the fact that Vitanzo had supplied the State with the names of five witnesses who were to provide an alibi for Hackett. Vitanzo was asked to give the names of the five individuals, and he did so.[23] The prosecutor

---

22. See page 1332 *supra.*

23. The entire cross-examination relating to the alibi defense is as follows:

> Q. Now you are familiar, are you not, with the law regarding discovery as you mentioned it; I have an obligation to show you what I have got, and you have an obligation

to show me any written statements you have got; is that right?
> A. That's correct.
> Q. And there is also certain regulations regarding the defense of alibi, that is, somebody claiming that he didn't commit the crime because he was somewhere else at the time?
> A. Correct, sir.

Q. And would you tell the Court and jury, particularly the jury, since I am sure the Court already knows, what is the requirement if a defendant wishes to raise the defense of alibi, that he notify the Prosecutor's Office within what period of time?

MR. FERRANTE: I object.

Q. If there is going to be an alibi defense.

THE COURT: I will allow it. I will charge the jury you have to do it ten days after the plea; I will allow the question and I will charge the jury.

THE WITNESS: I agree that's the answer.

Q. Within ten days of the indictment.

THE COURT: Of the plea.

Q. Of the plea; and is there an alibi defense in this case, Mr. Vitanzo?

A. As I understand it, there is.

Q. When did you forward that information to the Essex County Prosecutor's Office?

A. To the best of my recollection, when I forwarded it precisely I don't know, but you have a record of it. I forwarded it after I talked to my client; whether the second or third time, and I said to him that if indeed there is an alibi defense that you interpose, I need addresses and names of witnesses.

Q. If there is—you asked him if there is an alibi defense, or did he tell you there is an alibi defense?

A. I believe he told me; I don't remember precisely the word or, you know, what he told me at that time. We spoke about several things, but I did tell him I wanted names and addresses as accurately as he could get them of any alibi witnesses, and when I received them I would forward them on to the Prosecutor's Office.

Q. You knew that this had to be done within ten days of the plea?

A. That it had to be done?

Q. Doesn't it have to be done within ten days of the plea?

A. The rules state it has to be done. As a practical matter in many instances it is not done until thirty days or forty days later. If the Prosecutor chooses to object to it, he can make an objection. I have mailed in alibi letters three months later, four months later.

Q. It's up to the judge to decide whether or not the alibi can be used in court?

A. Or up to the Prosecutor to object to it, much the same way when I ask for discovery, wanted the Grand Jury transcript, didn't get it on time, you know, I have a right to object. It's a question what you want to do with the case.

Q. When did your client finally give you the names of the people he claimed he was with at the time this event occurred?

A. I haven't got an independent recollection. I would have to say it was sometime when I wrote the letter. I am sure there is a letter on file. My best guess—

MR. GOLDBERG: May I have this marked for identification?

THE COURT: S–19 for identification, letter 7/7/76.

Q. Mr. Vitanzo, showing you the letter S–19, does that refresh your recollection as to when you notified the Essex County Prosecutor's Office that there would be an alibi defense in this case?

A. The letter was made on or about July 7, he may have given it to me a day before, a few days before, but in that general vicinity.

Q. Now will you tell us the names of the people that are alibi witnesses that your client was with when this offense was occurring?

A. William Blake, Jefferson Brown, Willie Campbell, Booker Campbell, and a Clarence Williams.

Q. How many people is that altogether?

A. Five.

Q. Five people, and what address is given for Clarence Williams?

A. At the time I didn't have it because he didn't have it, so I just included the names as I knew it, and put a note the address was to be supplied. I inquired of Mr. Hackett if he could ascertain the address, to let me know and I would mail it in or have Mr. Ferrante mail it in. He had the case at that time.

Q. When did Mr. Hackett finally give you the address of Clarence Williams?

A. I don't recall getting it; he may have given it to my associate.

Q. You don't know whether he ever got the address in this?

A. Myself?

Q. Yes.

A. I don't have any independent recollection. He may have given it to Mr. Ferrante.

Q. Do you know what efforts were made to get the address of Clarence Williams?

A. I didn't make any personally.

Q. Okay. And you don't know if anybody else did?

A. No, I don't.

Q. Now are you familiar with the alibi rule, the court rule regarding what information has to be given to the Prosecutor's Office if someone is going to claim an alibi defense, what other information besides simply names and addresses of the people; if you would wish to review the rule, I would certainly make it available to you, Rule 3:11–1.

THE COURT: Gentlemen, if we are going to be protracted, I am going to have to recess, gentlemen.

MR. GOLDBERG: It is not much more.

THE COURT: All right. I will bear with you, but I don't want to keep the jury much later.

MR. GOLDBERG: I will try to be as brief as I can.

THE COURT: I am not trying to pressure you.

Q. Did Mr. Hackett ever tell you where he was supposed to—strike that. Is there a

repeatedly confronted Vitanzo with the defective notice, suggesting that the attorney had failed to provide the names on time or in a proper manner. He was even permitted to question Vitanzo on conversations between Vitanzo and his client in an effort to suggest that petitioner had aided counsel's noncompliance. However, the prosecutor succeeded only in showing that the notice of the alibi defense was given sixteen days late, that neither the prosecutor, defense counsel, nor the judge were in agreement as to what the rule required, and that petitioner himself had shown no disrespect for any court rule or order.[24] Indeed, at the end of this testimony, the prosecutor again made no objection to the introduction of the alibi defense.

The next morning there was yet another discussion of the alibi-notice rule and the prosecutor simply acknowledged receipt of the notice. Later, when defense counsel called the first name on the defective alibi notice, William Campbell, as a witness, the prosecutor called for a side bar conference, and, for the first time, objected to the notice of alibi. Petitioner's counsel explained that Campbell would not testify about Hackett's alibi, and so the prosecutor withdrew his objection. Tr. of Nov. 5, at 63–64.

The defense was not permitted to call any other alibi witness. When the defense called Jefferson Brown, the court refused to permit him to testify. In response to defense counsel's request to amend the defective alibi notice, the court stated:

> I refuse to let you use the witness and I refuse to let you use the place where he was at. I won't let you call any witnesses by reason of your failure to supply the name, the location and address. Now you

---

requirement, now that you have read the rule that in addition to names and addresses the Prosecutor's Office has to be put on notice as to specifically where and at what times the defendant claims he was?

A. According to the rule, there is, sir.

Q. Mr. Hackett ever give you that information where he supposedly was, what times and places?

A. Yes, he did. At what precise time I don't remember but he did.

Q. If he had given it to you when you sent that letter to the Prosecutor's Office considerably after the indictment July 7, 1976, if he had given you the information by then you would have obeyed the rule and sent that to the Prosecutor's Office, would you not?

A. If I were aware of it at the time, I would have done it, if it entered my mind at the time I would have done it, and if I had forgotten it or if it didn't enter my mind at the time I would not have done it.

Q. In any event, you don't know whether you had that information on July 7, do you?

A. I don't remember any independent recollection of it at the time, as to precisely where he was, at what point in time; as I understood the case it was from what the State's case showed, a period of time that was allegedly covered.

Q. And if there is a defense of alibi, that period of time has to be covered in the alibi defense, does it not, the names of the witnesses, the addresses of the witnesses and the specific place and times where the defendant was during the course of the crime?

A. Correct, sir.

Q. And your testimony now is that you just don't remember whether or not on July 7, some three months, two or three months after the indictment, you don't remember today whether or not you had that information about the specific places and the specific times where your client claims to have been?

A. Whether I had it or the office had it, you know; I am not sure of your question.

Q. Whether you had it; you are the one sent the letter July 7 to the Prosecutor.

A. I sent the letter when the case came up on my diary. I saw the piece of paper with the names. I had it re-typed, mailed it down.

I had Mr. Ferrante assigned to the case some time during the early part of the summer. He was handling most of the case.

Q. You don't remember yourself as of that date, whether or not you had the information regarding places and times?

A. I don't remember.

Q. You don't remember?

A. Precisely no, I don't remember.

MR. GOLDBERG: Thank you very much. I have no further questions.

Tr. of Nov. 4, at 203–10.

**24.** The cross-examination eloquently demonstrates not only petitioner's innocence in any transgression of the rules, but the ignorance of *both* counsel as to the requirement of the rule. The necessary information pertaining to an alibi defense is not due ten days after indictment and it is not due ten days after the plea, as counsel and the court proposed, but ten days after demand by the prosecution. *See* N.J. Court Rule 3:11–1.

don't wait until the morning of trial or the afternoon of trial. . . . There is a letter in July, you sent names, never sent him where. I refuse to let you use the witness.

Tr. of Nov. 5, at 75.

On the next trial day, the court, in response to a defense request, refused to reconsider its ruling and refused a proffer of testimony. In the course of argument, defense counsel raised the possibility of a continuance and pointed out that the State had done nothing to investigate the alibi despite possessing the names and addresses of the witnesses for many months. The court responded: "When [the State] receives nothing, it does nothing, yes, sir." Tr. of Nov. 8, at 54.

In this case there is no indication that petitioner waived his constitutional right to present the alibi testimony of witnesses. Indeed, if the record reveals any waiver, it would lie in the words and conduct of the prosecution rather than those of the defendant. The prosecution did not act on the defective notice for months, although it had ample opportunity to interview the witnesses or to demand full compliance with the statute. Nor did it object until well into trial. The State sat quietly while defense counsel in his opening statement promised the jury that it would hear alibi witnesses for petitioner. Its only response was that it was "not too concerned about alibi witnesses." Next, the State cross-examined petitioner's lawyer on the very defense the jury was later not permitted to hear. It brought forth the names of the witnesses, the failure of petitioner's lawyer to comply with the rules, and was even permitted to examine the lawyer on communications between the lawyer and client concerning the alibi defense, in an effort to undermine the credibility of both petitioner and his lawyer. Having impugned the credibility of the alibi defense which the jury had been promised but had not yet heard, the prosecution then persuaded the judge to keep the defense from the jury altogether.

On the basis of the evidence presented to it, the jury could have come to only one conclusion—petitioner had concocted an alibi defense so suspect that the judge did not even permit his witnesses to testify. Petitioner thus paid a double penalty. Not only was he deprived of his right to present his defense to the jury but the jury was also told that he would not be allowed to present it because defense counsel had not complied with court rules.

The trial court's refusal to permit the introduction of evidence crucial to petitioner's case visited a terrible punishment on a party innocent of even the minor transgression of the rules revealed by this record. He was deprived of the right to defend himself. The prosecutor's conduct in using the defense which the jury was not permitted to hear to undermine the credibility of the defense which they did hear was grossly unfair. In view of the highly technical nature of his counsel's error, the absence of any evidence of complicity by petitioner in that error, the lack of any prejudice to the State caused by the error, the severe prejudice to petitioner caused by the preclusion sanction, and the use of that sanction by the prosecution before the jury, we find that this defendant was deprived of fundamental rights and of due process of law.

Accordingly, a Writ of Habeas Corpus will issue for petitioner unless the State begins retrial proceedings within ninety days.