**Dana BRAUNSKILL, Petitioner,**

v.

**Gary HILTON, Superintendent, New Jersey State Prison, Trenton, New Jersey and Irwin I. Kimmelman, Attorney General of New Jersey, Respondents.**

Civ. A. No. 85–2008.

United States District Court,
D. New Jersey.

Feb. 27, 1986.

Jacqueline E. Turner, Asst. Deputy Public Defender, East Orange, N.J., for petitioner.

Debra L. Stone, Deputy Atty. Gen., Div. of Crim. Justice, Appellate Section, Trenton, N.J., for respondents.

## OPINION

HAROLD A. ACKERMAN, District Judge.

Petitioner Dana Braunskill, presently confined at New Jersey State Prison in Trenton, brings this *pro se* petition for habeas corpus under 28 U.S.C. § 2254. The issue in this case is whether it is constitutionally permissible in a state criminal prosecution for the trial judge to refuse to permit an alibi witness to testify solely because defense counsel did not respond to the state's discovery request within the time required by the state's notice of alibi rule. I hold that under the circumstances of this case, in agreement with Judge Stern in *Hackett v. Mulcahy*, 493 F.Supp. 1329 (D.N.J.1980), that petitioner's sixth amendment right to call witnesses in his defense outweighs the state's interest in enforcing its notice of alibi rule and that the preclusion sanction violated petitioner's sixth amendment right. Therefore, the petition for habeas corpus relief will be granted.

On January 30, 1981, petitioner was convicted in the Superior Court, Law Division, Essex County, New Jersey, of first degree sexual assault in violation of N.J.S.A. 2C:14–2, and fourth degree unlawful possession of a knife contrary to N.J.S.A. 2C:39–5(d). On March 26, 1981, petitioner received sentence for aggravated sexual assault charge, to run concurrently with an eighteen month sentence for the weapons charge. The Appellate Division affirmed the conviction on December 14, 1982, and the Supreme Court of New Jersey denied certification on March 2, 1983. Petitioner filed this habeas corpus application on April 26, 1985. He alleges denial of his right to call witnesses in his defense, ineffective assistance of counsel, and improper reference to his criminal history in violation of his constitutional rights.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On June 12, 1980, Jane Lyons, a sixty-nine year old woman, exited a bus and entered the lobby of her apartment building, the Troy Towers, in Bloomfield, between 12:15 and 12:30 a.m. She obtained her mail from her mailbox in the rear of the lobby, and as she turned to walk toward the elevator, she felt an arm around her throat. Ms. Lyons told her assailant to take her money but he did not; rather, he struggled with her until he got her down on the floor. The assailant then opened his trousers and exposed himself and told Ms. Lyons that if she followed his orders, he would not hurt her. He was holding a knife near her throat which the victim attempted to push away; in so doing she cut her hands severely. Her assailant then forced her to perform fellatio on him. During this incident Ms. Lyons heard someone enter the lobby and heard a voice, but she was unable to view the person because she was facing a wall. Shortly thereafter, the assailant left. Ms. Lyons entered the elevator and went to a neighbor's apartment, where she summoned the police.

Officer Michael Sailer of the Bloomfield Police Department was on routine vehicle patrol on June 12, 1980, when he received a radio report that an assault had occurred in the Troy Towers. Sailer and his partner proceeded to the apartment building and searched the lobby, where they found blood smeared on the floor in the vicinity of the

elevator. The officer observed that the elevator control dial indicated that the elevator was on the sixth floor, so he and his partner ascended to that floor to search for the victim. The officers found Ms. Lyons, who was extremely upset and bleeding profusely from her wounds. The officers transported the victim to a local hospital for treatment.

Ms. Lyons was unable to get a good look at the face of her attacker. She told Officer Sailer that her assailant was black, between 5'6" and 5'9" in height, of medium build, and was wearing dark clothes and a jacket.

The defendant was identified by two witnesses. Both of these witnesses testified that the lighting conditions in the lobby where the incident occurred were very good. Josette Amabile, who also resided in Troy Towers testified that she entered the lobby shortly after midnight to retrieve her mail. She said she saw an elderly white woman against a wall on her knees and a black male who appeared to be seated or squatting. Ms. Amabile testified that she had direct eye contact with the male for approximately five seconds, at which time he groaned and covered his face with his hand. Ms. Amabile realized that something was wrong, and she ran back to the elevator.

Joseph Scherer, also a resident of Troy Towers, stated that he entered the lobby shortly after midnight. He noticed a commotion near the elevator and observed a black man whom he identified as the defendant struggling with a white woman. Mr. Scherer picked up a heavy ashtray and was about to strike the man when the assailant told Mr. Scherer to leave or he would kill the victim. Mr. Scherer left and telephoned the police.

Detective Donald Peters of the Bloomfield Police responded to the crime scene at 4:30 a.m. on the morning of June 12, 1980, and interviewed Mrs. Amabile. The detective showed the witness six photographs, and she identified the defendant as the assailant. At 6:00 p.m. on the same date (eighteen hours after the attack), the detective interviewed the victim, but she was only able to give him a general description of her attacker and was unable to make a photographic identification. Ms. Lyons nevertheless testified on cross-examination that she believed the defendant was the man who attacked her. Detective Peters showed the victim defendant's photograph because Peters had previously been involved in investigations concerning Mr. Braunskill which concerned sexual crimes. At approximately 8:00 p.m. on the same date, Peters interviewed Joseph Scherer. Peters showed the witness the same photo spread he had earlier shown to Amabile, and Scherer also identified defendant as the assailant.

Detective Michael Sisco, who knew petitioner prior to June 11, 1980, testified that he saw him in dark clothing walking around Bloomfield in the direction of the Troy Towers Building, between 10:15 and 10:30 p.m. on the night in question. Detective Peters testified that he also saw Braunskill at around 11:30 that evening when he was patrolling in an unmarked vehicle. Detective Peters stated that he saw other black males dressed in dark clothing walking around Bloomfield that night, but admitted that none of these individuals were depicted in the photos shown to Ms. Lyons or other witnesses.

Dana Braunskill testified that he was not in Troy Towers that evening, contending that it was a case of mistaken identification. He testified that he was not wearing dark clothing on that night, although his clothing might appear dark at night. The victim, who had described her assailant's clothing as dark, saw the assailant in a well-lit lobby. Defendant testified that several hours prior to midnight he visited a couple of bars and diners in Bloomfield and Orange. Except for a ride by an acquaintance from the Sixty-Five Club on Washington Street in Bloomfield to the Halftime Emporium on Broad Street in that city, defendant walked from place to place. In the course of the evening, defendant walked across the street from an underpass which leads to the Troy Towers park-

ing lot. He further testified that he arrived at the apartment of his girlfriend, Florine Moore, with whom he was living at the time, shortly after 11:30 p.m. He stated that Ms. Moore was on the telephone when he came into the apartment. Defendant further testified that after his arrival at Ms. Moore's apartment at 219 Park Place in Orange, he did not go out again.

Petitioner also related that on a number of occasions in the past he had been stopped by Detectives Peters and Sisco and other members of the Bloomfield Police Department who had allegedly attempted to arrest him without cause.

The jury began deliberating at 11:55 a.m. on January 28, 1981. At 4:00 p.m. they advised the court that they were not ready to reach a verdict and were sent home. The jury resumed deliberations at 9:00 a.m. the next day. At 12:15 p.m. they asked the court whether Josette Amabile was asked whether she knew the police officers, and whether either Detective Peters or Detective Sisco testified that they were working together on the evening in question. Although these circumstances were not testified to, the judge told the jury they would have to rely on their own recollections. At 2:20 p.m. on January 29, the jury informed the court that they were unable to reach a unanimous decision. The judge instructed the jury to continue deliberating. At 3:55 p.m. the jury was sent home. On January 30, 1981, the jury began its third day of deliberations at 9:15 a.m. At 12:30 p.m. the judge called the jury into the courtroom and asked the foreman whether further deliberations would be fruitful. The foreman advised the trial judge that they would. At 3:10 p.m., the jury reached a verdict, finding defendant guilty of sexual assault and unlawful possession of a knife.

On March 26, 1981, the court denied defendant's motion for a new trial and sentenced him to an eight-year state prison term with a four-year parole disqualifier on the sexual assault count, and a concurrent eighteen-month term on the weapon count.

A notice of appeal was filed with the Appellate Division on May 11, 1981. In a *per curiam* opinion dated December 14, 1981, the Appellate Division affirmed defendant's conviction and sentence. The Appellate Division found that the trial court committed several errors, but found them to be harmless, and with respect to one issue not raised at trial, not plain error. A notice of petition and a notice of appeal were filed with the Supreme Court of New Jersey on January 3, 1983. The petition for certification was denied on March 2, 1983.

This was a one day trial which began and ended on Tuesday, January 27, 1981. Two weeks and one day prior to trial (on Monday, January 12, 1981), petitioner's trial counsel telephoned the assistant prosecutor and informed him that a notice of alibi was going to be filed. A notice of alibi was filed and served on the Prosecutor on January 21, 1981, six days prior to trial. It listed Florine Moore and her address.

The prosecutor argued that the alibi witnesses ought to be precluded from testifying because the notice failed to comply with the time requirement of New Jersey Court rule 3:11–1, notwithstanding the fact that the prosecutor had already interviewed Florine Moore the previous Friday.

Defense counsel stated that his notice was out of time because there had been a long period of time between his verifying that Ms. Moore was a witness, and his actually seeing her. As Ms. Moore was no longer defendant's "girlfriend," defendant had had trouble securing her for an interview. Defense counsel stated to the court that he wanted to speak to the witness before filing the notice. Defense counsel also argued that the state's case "would not be prejudiced one iota" and that the state probably had more information than he did, since the prosecutor had already interviewed Ms. Moore.

The trial judge not only denied the motion to add the name of Ms. Moore, but also precluded an alibi testimony. His entire ruling on the issue is as follows: "Mr. Greenspoon [defense counsel], I'm going to rule on the question of alibi that you're way out of time, I should preclude under

the rules from asserting that defense through other witnesses other than the defendant [sic]. He may do so, I cannot stop him." (exhibit 9R at 7)

The Appellate Division found that the trial judge failed to follow the direction of *State v. Francis*, 128 N.J.Super. 346, 350–351, 320 A.2d 173 (App.Div.1974), with regard to determining whether the State had been disadvantaged by the late alibi notice, and if so, whether alternatives to exclusion of the witness were feasible. The Appellate Division further observed that while the trial judge failed to explore the need for and possibility of a reasonable continuance, "in a not evenhandled manner, he granted the State's application to produce evidence beyond discovery supplied defendant by the State, and offered a continuance if defendant claimed to be surprised by the new material." (Exhibit 3R at Appendix 8a). The Appellate Division made no comment regarding the fact that the prosecutor had interviewed the alibi witness several days prior to trial.

The Appellate Division found that the proposed alibi testimony would have been of "dubious value." The court gave no indication as to how it reached that conclusion. The Appellate Division held that even if the exclusion of defendant's alibi witness constituted constitutional error, it was satisfied "beyond a reasonable doubt that any such error did not affect the verdict."

## EXHAUSTION OF REMEDIES

■ A federal court will not consider an application for a writ of habeas corpus unless it appears that the applicant has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b). Not only must the applicant have fairly presented the substance of his habeas corpus claims to the state courts for adjudication on the merits, *Pitchess v. Davis*, 421 U.S. 482, 488, 95 S.Ct. 1748, 1752, 44 L.Ed.2d 317 (1975); *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Swanger v. Zimmerman*, 750 F.2d 291, 295–96 (3d Cir.1984); *Jones v.*

*Superintendant of Rahway State Prison*, 725 F.2d 40, 41 (3d Cir.1984); *Zicarelli v. Gray*, 543 F.2d 466, 472–75 (3d Cir.1976), but he must have availed himself of all opportunities available in the state courts to raise the questions presented in his application. 28 U.S.C. § 2254(c); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

The state argues that petitioner has not availed himself of all state remedies. It contends that even if petitioner has presented his claims to the Appellate Division and the Supreme Court of New Jersey, he still has recourse to the courts by application for post-conviction relief, pursuant to New Jersey Court Rule 3:22–1 et seq. This argument is meritless. It is well settled that once a claim has been directly appealed to the state's highest court, it will be considered exhausted even if no post conviction relief is sought. *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 41–42 (3d Cir.1984); *United States ex rel Hickey v. Jeffes*, 571 F.2d 762, 764 (3d Cir.1978); *United States ex rel Schultz v. Brierley*, 449 F.2d 1286 (3d Cir.1971); *Morrison v. Kimmelman*, 579 F.Supp. 796, 801 (D.N.J.1984).

The state also contends that the claims petitioner now raises, were not "fairly presented" in the state courts. It contends that if even one claim remains unexhausted, a federal court must dismiss the claim. *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982). The petitioner would then have the "choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.*

■ 28 U.S.C. § 2254 requires a federal habeas petitioner to provide the state courts with a "fair opportunity" to consider his constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *Brown v. Cuyler*, 669 F.2d 155, 158 (3d Cir.1982); *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir.1976). Pe-

titioner does not satisfy this requirement by merely presenting the facts necessary to support the federal claim or by presenting a "somewhat similar state-law claim." *Anderson v. Harless,* 459 U.S. at 6, 103 S.Ct. at 277. The habeas petitioner must have fairly presented to the state courts the "substance" of his federal habeas corpus claim. *Id.*

▮ I now consider whether petitioner fairly presented the substance of his three claims to the state courts. Petitioner's first claim is that his conviction was obtained by depriving him of his sixth amendment right to call witnesses in his favor. Petitioner presented this argument both in his brief submitted to the Appellate Division (Exhibit 8R at 8) and in his petition for certification (Exhibit 3R at 7). Petitioner expressly referred to the violation of his sixth amendment right to present witnesses in his defense and cited federal precedent to support his arguments. The Appellate Division considered and rejected petitioner's Sixth Amendment argument, stating: "[E]ven if a constitutional error involving defendant's sixth amendment right occurred, a reversal would not be mandated since we are satisfied beyond a reasonable doubt that any such error did not affect the verdict." (Exhibit 3R Appendix at 8a).

The state acknowledges that the petitioner claimed a violation of the Sixth Amendment, but argues that "petitioner framed this claim primarily in terms of a violation of abuse of judicial discretion, pursuant to the New Jersey Court Rule 3:11–2". The state argues that petitioner did not fairly present his claim and has only stated "mere facts or grounds framed primarily in state procedural law and state case law." I disagree.

The state correctly observes that petitioner alleged that the exclusion of his witness constituted abuse of the trial judge's discretion in applying New Jersey Court Rule 3:11–2. However, this was a claim separate from and in addition to petitioner's constitutional claim. Petitioner's point heading in his brief to the Appellate Division made this clear. He argued: "The

trial court's exclusion of the defendant's alibi witness constituted an abuse of discretion *and* violated the defendant's sixth amendment right to present witnesses in his defense." (exhibit 8R at 1, emphasis added). Petitioner asserted an alternate state-law ground for the court to consider but also fairly presented his federal constitutional claims.

The state's citation of numerous cases in which non-exhaustion is found is not persuasive. None of them apply to this case where the state court was presented with both a federal and state law claim. *Anderson v. Harless,* 459 U.S. 4, 7, n. 4, 103 S.Ct. 276, 279, n. 4, 74 L.Ed.2d 3 (1982) (citation to a state court decision predicated solely on state law ordinarily not sufficient to apprise a reviewing court of a potential federal claim); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1188, 71 L.Ed.2d 379 (1982) (prisoner acknowledged non-exhaustion of two of his federal claims. "A district court must dismiss such mixed petitions."); *Mabry v. Klimas,* 448 U.S. 444, 100 S.Ct. 2755, 65 L.Ed.2d 827 (1980) (state's highest court must be given an opportunity to consider petitioner's claim to right to be resentenced under new recidivist statute, even though petitioner had exhausted other claims related to alleged sentencing errors.); *Brown v. Cuyler,* 669 F.2d 155, 158 (3d Cir.1982) (*Miranda* waiver issue was distinguishable from involuntariness claim and was not fairly presented in the state court); *Zicarelli v. Gray,* 543 F.2d 466, 474 (3d Cir.1976) (mere reference by defendant's counsel to an opinion containing a constitutional claim did not fairly present the cross-section issue to the state courts).

I find that petitioner's claim of ineffective assistance of counsel in violation of the Sixth Amendment was fairly presented to the state courts. See Exhibit 3R at 16; Exhibit 8R at 29. The government does not dispute this finding.

Petitioner's final claim is that his conviction was obtained by improper reference to his probationary status and to prior arrests depriving him of a fair trial. The government argues that this claim is not cogniza-

ble on a habeas corpus petitioner. I disagree.

■ Mindful that complaints are to be liberally construed in the federal courts especially when a party is proceeding *pro se, Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1971), I find that petitioner's habeas petition can reasonably be understood to raise a due process claim under the Fourteenth Amendment. Petitioner's failure to use specific constitutional language is not fatal for purposes of exhaustion. The Court in *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971) stated that "[w]e do not imply that respondent could have raised the [constitutional] claim only by citing 'book and verse on the federal constitution.' ... We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts."

A determination of whether the substance of the petitioner's claim was advanced in the state proceedings requires "a searching scrutiny by the federal habeas court of the points that were raised in the state tribunals, in order to ensure that the state system was granted a fair opportunity to confront arguments that are propounded to the federal habeas courts." *Zicarelli v. Gray, supra.* In order to determine whether the "same claim" or the "subsequent equivalent" of the claim has been previously presented to the state courts, it is necessary to ask whether the "method of analysis" asserted in the federal courts was readily available to the state court. *Id.* The "method of analysis" is to determine whether the evidentiary errors of the improper references to petitioner's prior arrests and his probationary status were "fundamentally unfair." *See Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

In his brief to the Appellate Division, petitioner framed his claim of improper reference to his prior arrests and his probationary status in terms of "reversible error" and cited only state law (exhibit 8R at 17). Nevertheless, petitioner argued that the error deprived him of a "fair trial" (*Id.* at 17) and violated his "fundamental rights." (*Id.* at 23). The government also viewed the claim as a question of whether defendant received a "fair trial." (State Appellate brief at 12). The Appellate Division also considered the fairness of admitting the evidence, stating: "We do not regard any error that may have been committed by the trial judge to have been clearly capable of producing an *unjust* result." (Exhibit 3R at 9a) (emphasis added).

In making this determination, it can be fairly concluded that the state courts implicitly held that petitioner's right to due process of law was not violated. Petitioner's "broadly alleged constitutional argument, together with the repeated assertion that he was denied a fair trial, is enough to satisfy the exhaustion requirement." *Bisaccia v. Attorney General of State of New Jersey,* 623 F.2d 307 (3d Cir.), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980). "While the Appellate Division did not cite to the Fourteenth Amendment in its [opinion], its 'method of analysis' was consistent and synonymous with the classic findings required for Fourteenth Amendment violations." *Id.* at 310. *Cf. Santana v. Fenton,* 685 F.2d 71, 74 (3d Cir.), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1982) (no exhaustion when petitioner did not present the right-to-testify argument in constitutional terms but in terms of the trial court's abuse of judicial discretion); *Paullet v. Howard,* 634 F.2d 117, 119 (3d Cir.1980) (no exhaustion where prosecutor's opening remarks presented to state courts as reversible error not as a constitutional violation).

The teaching of *Bisaccia, supra,* is applicable to this case. There the court stated "[b]ecause the substance of the appellant's state claim is virtually indistinguishable from the due process allegation now before the federal court, and because the method of analysis is indistinct, the *Picard* test for exhaustion of state remedies has been met. This conclusion is especially appropriate because of the necessarily vague nature of a due process allegation. Failure to invoke

the Due Process Clause more specifically should not therefore stand in the appellant's path to habeas relief, especially since the state courts understood and considered the 'substantial equivalent' of the appellant's claims before this court and the court below." *Bisaccia*, at 312.

## SCOPE OF REVIEW

"It has long been established, as to constitutional issues which may properly be raised under § 2254, that even a single federal judge may overturn the judgment of the highest court of a State insofar as it deals with the application of the United States Constitution or laws to the facts in question." *Sumner v. Mata*, 449 U.S. 539, 543–44, 101 S.Ct. 764, 767, 66 L.Ed.2d 722 (1981).

However, under 28 U.S.C. § 2254(d), a state court factual finding is entitled to a "presumption of correctness" in a federal habeas corpus proceeding unless one of eight enumerated exceptions apply. Subsection (d) reads as follows:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding;

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7) inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

Congress enacted subsection (d) "to insure that a state finding [of fact] not be overturned merely on the basis of the usual 'preponderance of the evidence' standard." *Sumner v. Mata*, 449 U.S. at 552, 101 S.Ct. at 769. In order to ensure that this mandate is enforced, the Supreme Court has held that "a habeas court should include in

its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'" *Id.*

An examination of the trial judge's statement indicates that he would apply the sanction of precluding petitioner's alibi witness solely because of defense counsel's untimeliness in asserting an alibi defense in violation of N.J. Court rule 3:11–1 and 3:11–2. Those rules read as follows:

**3:11–1. Bills of Particulars; Amendment**

If a defendant intends to rely in any way on an alibi, he shall, on written demand of the prosecuting attorney and within 10 days thereafter, furnish a written bill of particulars, signed by him, stating the specific place or places at which he claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi. Within 10 days after receipt of such bill of particulars from the defendant, the prosecuting attorney shall, on written demand, furnish the defendant or his attorney with a written bill of particulars stating the names and addresses of the witnesses upon whom the State intends to rely to establish defendant's presence at the scene of the alleged offense. The trial court may order the amendment or amplification of such particulars, or of the time of their service, as the interest of justice requires.

**3:11–2. Failure to Furnish**

If such bill of particulars is not furnished as required, the court may refuse to allow the party in default to present witnesses at trial as to defendant's absence from or presence at the scene of the alleged offense, or make such other order or grant such adjournment as the interest of justice requires.

■ The trial judge's finding that defense counsel submitted his notice of alibi in an untimely manner will be presumed correct under § 2254(d). However, as the Appellate Division noted, the trial judge made no findings of fact concerning whether petitioner purposefully withheld his alibi defense from the state, whether petitioner fabricated his alibi defense, whether the State was prejudiced by the untimely notice, whether the alibi witness' testimony was particularly important to petitioner's defense or merely cumulative, whether other less severe sanctions could have been reasonably imposed on petitioner or defense counsel, or whether a continuance would not have been feasible under the circumstances.

■ The Appellate Division's finding that the proffered testimony was of "dubious value" appears to be a determination either that the proffered testimony would not have been credible or that the testimony would have been cumulative of defendant's own testimony concerning his alibi. Even if the Appellate Division's finding is entitled to a presumption of correctness under 28 U.S.C. § 2254(d) and *Sumner v. Mata*, several exceptions to the presumption apply here. First, the material facts underlying the finding were not adequately developed by the trial court. 28 U.S.C. § 2254(d)(3). Second, petitioner did not receive a "full, fair, and adequate hearing" on the issue of the credibility or importance of Ms. Moore's testimony. *Id.* § 2254(d)(6). Finally, the finding is "not fairly supported by the record." *Id.* § 2254(d)(8). There is no indication in the record that Ms. Moore's testimony would not have been credible and important to petitioner. Therefore, the Appellate Division's finding that Ms. Moore's testimony would have been of "dubious value" will not be presumed correct.

The United States Supreme Court has recently stated that "[i]n the § 2254(d) context, as elsewhere, the appropriate methodology for distinguishing questions of fact from questions of law has been, to say the least, elusive." *Miller v. Fenton*, —— U.S. ——, ——, 106 S.Ct. 445, 451–53, 88 L.Ed.2d 405 (1986). In *Miller* the Court reversed the Third Circuit's denial of a habeas corpus petition. The Third Circuit had held that the determination of the vol-

untariness of petitioner's confession was a question of fact to be accorded the presumption of correctness. *Miller v. Fenton*, 741 F.2d 1456, 1464 (3d Cir.1984), reversed at —— U.S. ——, 106 S.Ct. 445 (1985). The Supreme Court held that the issue was a question of law subject to "plenary federal review." —— U.S. at ——, 106 S.Ct. at 451–53.

The Court provided guidelines to be used in determining whether an issue involves a question of law or a question of fact, stating: "At least in those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." —— U.S. at ——, 106 S.Ct. at 451–53. A situation which would justify extending deference to the trial court would exist if, for example, "the issue involve[d] the credibility of witnesses and therefore turne[d] largely on an evaluation of demeanor." *Id.* The Court found that "assessments of credibility and demeanor are not crucial to the proper resolution of the ultimate issue of voluntariness."

In the instant case, there is no issue concerning the legal or factual character of the state court findings. Had the state court made findings concerning the defendant's state of mind in waiving his right to present an alibi witness, the issue might have arisen. I expressly make no determination as to whether such finding would be a question of law to be presumed correct under § 2254(d) or whether the issue would be subject to plenary federal review as a matter of constitutional law.

I need not review petitioner's claims of ineffective assistance of counsel and denial of a fair trial by reference to prior arrests and probationary status, since I have decided to grant his petition for habeas relief based on the denial of his right to present witnesses in his favor.

## THE MERITS

The right to present witnesses in one's defense is a fundamental right guaranteed by the Sixth Amendment and made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington* at 19, 87 S.Ct. at 1923.

■ Although the state may not prohibit the exercise of this right, it clearly may condition it on reasonable rules designed to further legitimate state interests. The Supreme Court has recognized that the State has a legitimate interest in preventing a criminal defendant from concocting a last minute alibi, and has upheld the constitutionality of a notice of alibi statute which provides the defendant with reciprocal discovery rights. *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973); *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). It has expressly reserved, however, the question presented here—whether the enforcement of such a statute by the exclusion of testimony violates the defendant's right to compulsory process. *Wardius v. Oregon*, 412 U.S. at 472, n. 4, 93 S.Ct. at 2210, n. 4; *Williams v. Florida*, 399 U.S. at 83, n. 14, 90 S.Ct. at 1896, n. 14; *Smith v. Jago*, —— U.S. ——, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985) (White dissenting from denial of petition for a writ of certiorari); *Taliaferro v. Maryland*, 461 U.S. 948, 103 S.Ct. 2114, 77 L.Ed.2d 1307 (1983) (same).

Federal courts faced with sixth amendment challenges to witness preclusion orders have offered varied responses. The Fifth Circuit is the only court to have found that witness preclusion orders imposed solely as sanctions to enforce discovery orders against criminal defendants *per se* violate the compulsory process clause of the sixth amendment. *United States v. Davis*, 639 F.2d 239, 243 (5th Cir.1981). *See also Fendler v. Goldsmith*, 728 F.2d 1181, 1185–87 (9th Cir.1983) (analyzing the *Davis* court's approach).

Most other courts, including the state courts of New Jersey, have applied a balancing test, holding that the government's interest in enforcing discovery rules should be balanced against the defendant's right to call witnesses in his favor. *See, e.g., Fendler v. Goldsmith*, 728 F.2d 1181, 1187 (9th Cir.1983) (habeas petitioner entitled to relief under both the balancing approach and the *Davis* approach). *Chambers v. Mississippi*, 410 U.S. at 295, 93 S.Ct. at 1045 (the sixth amendment right to call and examine witnesses is "not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal process.... But its denial or significant diminution calls into question the ultimate integrity of the factfinding process and requires that the competing interest be closely examined."); *Ronson v. Commissioner of Cor. of State of N.Y.*, 604 F.2d 176 (2d Cir.1979) (habeas petitioner entitled to relief where he gave adequate notice of intention to use insanity defense and government was not prejudiced by technical noncompliance with discovery rule); *United States ex rel. Enoch v. Lane*, 581 F.Supp. 423 (N.D.Ill.1984) (habeas petitioner entitled to relief where there is no evidence that he purposefully withheld the name of a material witness and where the witness' testimony was very important to his defense); *United States ex rel. Robinson v. McGinnis*, 593 F.Supp. 175, 181 (C.D.Ill.1984) (where trial judge only made a limited inquiry into habeas petitioner's failure to raise an alibi defense in a timely fashion, preclusion was too severe a sanction); *Hacket v. Mulcahy*, 493 F.Supp.

1329, 1340 (D.N.J.1980) ("in view of highly technical nature of his counsel's error, the absence of any evidence of complicity by petitioner in that error, the lack of any prejudice to the State caused by the error, the severe prejudice to petitioner caused by the preclusion sanction by the prosecution before the jury..." defendant was entitled to habeas relief); *State v. Francis*, 128 N.J.Super. 346, 351, 320 A.2d 173 (App.Div. 1974) (adopting balancing test but finding preclusion to be harmless error).

Other circuits have only considered preclusion of alibi and alibi-rebuttal witnesses in the context of direct review of federal cases determining only whether there was an abuse of discretion and without considering sixth amendment violations. *See United States v. Woodward*, 671 F.2d 1097 (8th Cir.1972) (not an abuse of discretion where trial judge did not exclude government's alibi-rebuttal witness where government failed to disclose names of rebuttal witnesses in discovery); *United States v. White*, 583 F.2d 899 (6th Cir.1978) (not an abuse of discretion where trial judge precluded defendant from presenting alibi witness after defendant rested his case where trial judge found that defendant deliberately disregarded the discovery rule); *United States v. Fitts*, 576 F.2d 837 (10th Cir.1978) (although better practice would have allowed defendant to present alibi testimony, wording and history of Federal Rule of Criminal Procedure 12.1 contemplated such exclusion and trial judge did not abuse his discretion); *United States v. Barron*, 575 F.2d 752 (9th Cir.1978) (not an abuse of discretion for trial judge to preclude alibi witness where government served discovery request eleven days before trial and defendant's response came two days late).

■ I find that the balancing test is the correct standard to be applied in reviewing a habeas petition where the state court imposed a witness preclusion sanction to enforce the state's notice of alibi rule. Therefore, I will follow the standard applied in *Fendler, supra*. The weight of authority and a proper consideration of state interests supports the balancing test.

*See, e.g., Hackett v. Mulcahy,* 493 F.Supp. 1329, 1340 (D.N.J.1980) (applying a balancing approach). An absolute prohibition of using the witness preclusion sanction to enforce notice of alibi rules is unnecessary. Such a prohibition could result in making trial courts powerless to prevent criminal defendants from concocting last minute alibis. A habeas court can take all factors into account by employing a balancing test.

■ I turn now to the question of whether the State's interests in enforcing its discovery rule outweigh petitioner's sixth amendment right to call witnesses in his favor. As stated previously, the state courts made no findings of fact which address this issue and to which I could defer. Thus, an independent search of the record must be made.

I find that the testimony of an alibi witness would have strengthened petitioner's case. Ms. Moore's testimony would have been neither cumulative of other evidence nor a waste of time. By definition, if a jury finds the testimony of an alibi witness to be credible and believes a defendant was elsewhere when the crime occurred, it will acquit the defendant. The fact that the jury took two and one-half days to reach a verdict also indicates that the testimony of an alibi witness may have created reasonable doubt.

Furthermore, there is no evidence that defendant purposefully withheld Ms. Moore's name from the State. Based on the record, it appears that the petitioner did tell his attorney about Ms. Moore. However, "[e]ven wilful noncompliance by an attorney which may not be attributed to the client does not constitute waiver [of sixth amendment rights]." *Hackett v. Mulcahy,* 493 F.Supp. 1329, 1336 (D.N.J. 1980).

In addition, the State did not show what prejudice, if any, it would have suffered. To the contrary, the prosecutor had already interviewed Ms. Moore prior to trial. If the State had required a continuance to prevent prejudice, this alternative could have been pursued. The trial judge's offer of a continuance for defense counsel to research newly acquired discovery shows that such an alternative was indeed feasible.

I find that where the witness could have strengthened petitioner's case, where the state has not shown that defendant purposefully withheld notice of his witness, and where the state showed no prejudice in allowing the witness to testify, the trial court committed constitutional error in imposing the witness preclusion sanction. Under the circumstances in this case, therefore, the record as a whole shows that the petitioner's sixth amendment right to call witnesses in his favor outweighed the state's interest in enforcing its discovery rules and that the state court's preclusion of petitioner's alibi witness justified only by the untimely response of defense counsel to the state's discovery request denied petitioner fundamental rights and due process of law.

### HARMLESS ERROR TEST

■ Because the trial court's error affected substantial constitutional rights, I must determine whether the error was "harmless beyond a reasonable doubt." *See, e.g., Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Third Circuit recently reviewed the *Chapman* standard in *Holland v. Attorney General of New Jersey,* slip op. November 22, 1985. There the court stated:

it is now established law that erroneous admission of evidence, even evidence admitted in violation of a constitutional right, is not automatically reversible error. In *Chapman v. California,* ... the court held that federal constitutional errors which are harmless beyond a reasonable doubt do not require reversal, but that the beneficiary of the error, the state, bears the burden of proving harmlessness. *Id.* at 23–24 [87 S.Ct. at 827–28]. In *Chapman,* the inquiry into harmlessness was articulated as "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 23 [87 S.Ct. at 827] (*quoting Fahy v. Con-*

*necticut,* 375 U.S. 85, 86–87 [84 S.Ct. 229, 230, 11 L.Ed.2d 171] (1963).)

Whether the alleged constitutional error was harmless is a question of federal law. *Rushen v. Spain,* 464 U.S. 114, 120 [104 S.Ct. 453, 456–57, 78 L.Ed.2d 267] (1983). This frequently requires that the federal habeas court review the untainted evidence.... Slip op. at 12–13.

In reviewing the evidence, "the court must assess the 'probable impact of the [error] on the minds of an average jury.'" *Allison v. Gray,* 603 F.2d 633, 634 (7th Cir. 1979) (quoting *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828 (1969)).

The Appellate Division, in reviewing this case, stated regarding the notice of alibi issue:

> ... if error was committed in this respect we are satisfied that it was harmless. Not only was the nature of the proposed alibi testimony such as to have been of dubious value, but the evidence presented by the state ... overwhelmingly established defendant's guilt. Thus, even if a constitutional error involving defendant's sixth amendment right occurred, a reversal would not be mandated since we are satisfied beyond a reasonable doubt that any such error did not affect the verdict. *State v. Macon,* 57 N.J. 325, 340 [273 A.2d 1] (1971).

I disagree with this assessment of the harmless nature of the error.

By definition, if a jury finds the testimony of an alibi witness to be credible and believes a defendant was elsewhere when the crime occurred, it will acquit the defendant. Obviously the erroneous exclusion of such testimony could affect the verdict. In this case, the only testimony presented in support of defendant's alibi defense was by the defendant himself. I cannot find beyond a reasonable doubt that corroborating alibi testimony would not have affected the verdict.

The harm was further aggravated when the trial court allowed the state to cross examine the petitioner about his lack of alibi witnesses and subsequently allowed the state to comment upon the absence of alibi witnesses to the jury.

In cross-examining Braunskill, the prosecutor questioned him as follows regarding his whereabouts at the time the crime occurred:

Q: And all these people saw you there at the Sixty-five Club that evening. Isn't that correct?

A: Yes, yes.

Q: And since June 12, have you spoken to any of these people?

A: Yes, I have tried to get them to come to court, yes.

Q: But none of them are coming to court. Isn't that correct?

A: From what I can see, yes, they haven't been.

Q: And did you tell your attorney to get them?

A: Yes, I told him, but he told me they would be no good to me if they're not willing to come on their own. Trial Transcript, 1/27/81, 115–20 to 116–6.

In his summation, the prosecutor made the following statements in spite of an objection by defense counsel and a warning by the trial judge that he was in "a very potentially dangerous zone:"

> And if that wasn't enough, there's even more, more absurdity to his whole story. He said he was at several bars and saw many friends of his. As a matter of fact, two of his friends who he named from the witness stand had given him a ride, that ride to the Halftime Emporium, and these people, all these people, maybe fifty, sixty, seventy people in all these places, could verify, could corroborate his story.... He said he wasn't going to force them to come in. Is that believable? Is that credible? Trial Transcript, 1/28/81, 35–25 to 37–13.

Furthermore, the state's evidence does not overwhelmingly demonstrate petitioner's guilt so as to support a finding that the error was harmless. The victim herself was unable to identify the petitioner from photographs while the incident was fresh in

her mind. Admittedly the two witnesses did select his photograph. However, they did so based on viewing the assailant for a matter of seconds, and they were shown only six photographs. "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." *United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 1932–33, 18 L.Ed.2d 1149 (1967); *State in the Interest of W.C.,* 85 N.J. 218, 224, 426 A.2d 50 (1981). With regard to photographic identification, the United States Supreme Court has recognized:

A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification.... Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent ... courtroom identification.

*Simmons v. United States,* 390 U.S. 377, 381, 383–84, 88 S.Ct. 967, 969, 970–71, 19 L.Ed.2d 1247 (1968).

The Third Circuit has recently analyzed the reliability of eyewitness testimony in approving the use of experts in the field of human perception and memory. Such experts may properly testify to the reliability of eyewitness identification and satisfy the helpfulness standard of Fed.R.Evid. 702. The court listed numerous factors which it found could affect the reliability of eyewitness testimony. They are as follows:

(1) the "forgetting curve," i.e. the fact that memory does not diminish at a uniform rate;

(2) the fact that contrary to common understanding, stress causes inaccuracy of perception and distorts one's subsequent recall;

(3) the "assimilation factor," which indicates that witnesses frequently incorporate into their identifications inaccurate information gathered after the event and confused with the event;

(4) the "feedback factor," which indicates that where identification witnesses discuss the case with each other they can unconsciously reinforce their individual identifications; and

(5) the fact that studies demonstrate the absence of a relationship between the confidence a witness has in his or her identification and the actual accuracy of that identification. *United States v. Downing,* 753 F.2d 1224 (3d Cir.1985).

The court also recognized other variables approved by the Sixth Circuit:

(1) that a witness who does not identify the defendant in a first line-up may 'unconsciously transfer' his visualization of the defendant to a second line-up and thereby incorrectly identify the defendant the second time;

(2) that studies demonstrate the inherent unreliability of cross-racial identifications; and

(3) that an encounter during a stressful situation decreases the eyewitness' ability to perceive and remember and decreases the probability of an accurate identification. *Id.* at 1231.

Some of these factors support my finding that the state's properly adduced evidence was not overwhelming and that the evidence was incapable of overcoming the erroneous preclusion of petitioner's alibi witness.

Based upon the non-cumulative nature of the evidence, the fact that an alibi witness would have provided a more solid basis for the defense theory of the case, the fact that the jury in petitioner's trial took two and one-half days to deliberate over the evidence without the alibi witness and the fact that the state's properly adduced evidence was not overwhelming, I cannot con-

clude beyond a reasonable doubt that the state court's error was harmless.

I realize that two highly respected judges reached an opposite conclusion in affirming petitioner's conviction. As this opinion demonstrates, I plainly disagree with that panel's conclusion.

Petitioner was tried before a very able judge whose reputation needs no embellishment by this court. However, the trial court's refusal to permit the petitioner to introduce alibi testimony crucial to his case "visited a terrible punishment on a party [guilty of a] minor transgression of the rules.... He was deprived of the right to defend himself. The prosecutor's conduct in using the defense which the jury was not permitted to hear to undermine the credibility of the defense which they did hear was grossly unfair." *Hackett v. Mulcahy*, 493 F.Supp. 1329, 1340 (D.N.J.1980).

In granting the relief sought, this court is not unmindful of the egregious nature of the offense committed on an old woman. However, to countenance this constitutional transgression would undermine that palladium of our liberties, the Constitution, and the jewel in that document, the Bill of Rights.

Although this court has the authority to unconditionally order petitioner's enlargement, *see United States ex rel. Thomas v. New Jersey*, 472 F.2d 735, 742 (3d Cir.1973), I will give the state a reasonable time in which to retry petitioner. A writ of habeas corpus shall issue unless within 30 days the State of New Jersey shall afford petitioner a new trial.