**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3527-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALI S. MORGANO,

    Defendant-Appellant.

_____

Submitted September 11, 2017 — Decided June 26, 2018

Before Judges Sabatino and Ostrer.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 88-10-3334.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew J. Shaw, Designated Counsel, of counsel and on the brief).

Robert D. Laurino, Acting Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Special Deputy Attorney General/ Acting Assistant Prosecutor, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Ali S. Morgano appeals from the denial of his sixth petition[1] for post-conviction relief (PCR) after an evidentiary hearing. Defendant collaterally challenges his 1989 conviction for robbery, felony murder, purposeful murder, and other related crimes. He principally contends that his trial counsel was ineffective by failing to investigate alibi witnesses. He also argues counsel was ineffective for failing to call his co-defendant as a witness. Further, he contends the testimony of one of the alibi witnesses is newly discovered evidence that entitles him to a new trial. See R. 3:20-2.

We presume familiarity with the facts given defendant's numerous appeals. See e.g., State v. Morgano, No. A-5262-88 (App. Div. Jan. 28, 1991) (Morgano I). Suffice it to say there was substantial evidence — including defendant's two incriminating statements to police — that he aided Sean Jones in the commission of the 1988 robbery and murder of a street vendor in Newark. In his second statement, defendant told police that on June 6, 1988, Jones approached him about robbing a man selling pictures out of a van on Sixth Avenue in Newark. Although defendant "didn't want no part in the [r]obbery," he drove Jones to retrieve a gun kept

---

[1] The PCR court's 2011 order erroneously categorized this as defendant's seventh PCR petition by including defendant's federal habeas corpus petition in its count.

at defendant's mother's house, and then drove Jones to Sixth Avenue. Defendant then went to Hawk's Patio, a bar that was around the corner on Ninth Street. He was in the bar when he heard gunshots; he and other bar patrons went outside to see what happened. Jones ran towards him. They got into defendant's car and drove away. Jones gave defendant $1500 in what defendant claimed was hush money.

Defendant claimed his second statement was coerced. In his first statement, given several hours before the second, he admitted only that he was in Hawk's bar, heard shots, stepped outside, and agreed to drive Jones away from the scene. The police obtained the second statement after Jones gave a statement, implicating him in the robbery. According to Jones, defendant proposed the robbery and was with Jones when it happened.[2] After a hearing, the court denied defendant's Miranda[3] motion. We affirmed that ruling on defendant's direct appeal. Morgano I, slip op. at 2-3.

Defendant filed the PCR petition at issue in 2011. He argued trial counsel was ineffective in failing to investigate alibi

---

[2] Defendant was tried separately, and Jones did not testify. The State proceeded on the theory, consistent with defendant's own statement, that he was in the bar when the actual robbery and shooting occurred, but had aided Jones by helping him obtain the gun, and flee the scene.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3527-14T1

witnesses, particularly individuals who were at the bar with him at the time of the shooting. The PCR court determined the petition was procedurally barred by Rules 3:22-4 and 3:22-12.

We affirmed in State v. Morgano, No. A-3682-11 (App. Div. Jan. 25, 2013). We focused on defendant's argument that his attorney was ineffective for failing to locate and call as a witness William "Eddie" Brown, who was allegedly present with him in the bar. We held that Brown was not a new witness, since defendant was aware of his presence. Therefore, he could have raised the claim previously. Id. at 1-2.

Defendant filed a petition for certification, and moved under Rule 3:20-2 for a remand for an evidentiary hearing. In attached certifications, he asserted the testimony of two newly discovered witnesses, Abdullah Jackson and Qadir Pugsley, who were "unknown to [him] at the time of . . . trial," would corroborate his alibi that he was in Hawk's bar with Brown at the time of the shooting, and establish trial counsel was ineffective for not investigating alibi witnesses. The Supreme Court granted certification and remanded defendant's petition to the PCR court for reconsideration

and an evidentiary hearing on defendant's PCR.  State v. Morgano, 216 N.J. 2 (2013).[4]

At the hearing that followed, the State presented the testimony of defendant's trial counsel, who was a veteran public defender at the time of trial.  He acknowledged, after reviewing his notes from defendant's file, that defendant gave him the names of possible alibi witnesses from Hawk's bar.  His notes included Brown's name and a general area — as opposed to a specific address — where he might be found.

Testifying twenty-five years after the trial, counsel did not independently recall whether the individuals were located or investigated.  He testified that, consistent with his practice, he would have submitted an investigation request upon receiving the names from defendant.  However, he admitted that he did not "connect up" with any of the witnesses.

Although he could not recall any investigation of the bar patrons, trial counsel was unequivocal that their testimony would not have exculpated defendant.  He explained that defendant was never accused of shooting the street vendor.  Rather, he was accused of being Jones's accomplice.  Counsel testified that

---

[4] We note that the record before us does not include defendant's 2011 petition.  Consequently, we rely on his submissions to the Supreme Court to understand the grounds he presents for PCR.

defendant essentially confessed to felony murder by admitting to police that he helped Jones get the gun, dropped him off at the scene before he went to Hawk's bar, and was Jones's getaway driver after the shooting. Trial counsel reasoned that testimony from anyone inside the bar would only serve to place defendant directly at the scene. He commented that the witnesses were not "really alibi witnesses" at all.

Trial counsel also testified about his strategy. Although Jones stated at a pretrial hearing that he was willing to testify at defendant's trial, there is no competent evidence as to what he would have said.[5] Counsel chose not to call Jones as a witness because he was "vulnerable," a "bad guy," and his testimony would have implicated defendant. As counsel stated in his contemporaneous notes, even if Jones attempted to exculpate defendant on the stand, the jury would hear his prior statement inculpating defendant on cross-examination. Counsel wrote that Jones's testimony would "kill us," and reported that he advised defendant that he should not be called as a witness. Counsel also stated he advised defendant that he should not testify in his own

---

[5] In an interview of Jones roughly ten years after trial, he stated he found religion while incarcerated, and had decided to tell the truth, that defendant's involvement was limited to his helping Jones flee. That would appear to indicate that the willingness to recant occurred long after defendant's trial.

defense. He "was not going to do himself much good" by testifying, and the better strategy was to attack the State's case during summation.

Defendant testified at the evidentiary hearing that he chose not to take the stand on the advice of counsel. Regarding trial counsel's investigation of alibi witnesses, defendant testified that he informed counsel about Brown, and another person at the bar whom he identified only by a first name, Jihad. He admitted he did not personally know whether counsel was able to locate any of the witnesses he identified. He assumed counsel failed to investigate, because they did not testify at trial. He stated that he also asked his attorney to call Jones as a witness, because he believed Jones would exonerate him, but counsel did not call him at trial.

Brown and Pugsley testified for the defense at the PCR hearing. Abdullah Jackson did not, for reasons that are not apparent from the record. Pugsley testified that on the day of the shooting, he saw defendant park his car near the bar and meet Brown outside. He saw them enter the bar together. Pugsley remained outside and heard the sound of gunshots. He saw Jones, among others, running from Sixth Avenue. Pugsley saw defendant and Brown exit the bar. As defendant crossed the street to his car, Jones asked him for a ride. They both got into the car, and

defendant drove away. Pugsley testified that no one questioned him at the time about the incident, and he never sought out the police to report what he saw.

Brown testified he was in Hawk's bar with defendant on the day of the shooting. They heard gunshots, and walked outside to "see . . . what was going on." Brown testified defendant told him he was leaving. Brown saw defendant get into his car. He then saw Jones round the corner and get into defendant's car. He saw defendant and Jones drive off together. He left the area as the police began to arrive. He was never contacted about the shooting.

The PCR judge found Pugsley and Brown were credible. So was trial counsel, but the court noted that, given his lack of specific memory, he could not definitely say whether he asked for an investigation of the alibi witnesses. Applying the two-prong Strickland test, see Strickland v. Washington, 466 U.S. 668, 687 (1984), the court did not expressly find that trial counsel's performance was deficient. However, reaching the second prong, the court held that defendant had failed to demonstrate a "reasonable probability that but for . . . [counsel's] failings, the result of the proceedings would have been different." Ibid. The court reasoned that the witnesses' testimony did not overcome the evidence that defendant aided Jones in the commission of the robbery. The court concluded trial counsel was not ineffective

because even if Pugsley or Brown testified at trial, defendant "still would have been convicted of felony murder."

On appeal, defendant raises the following points in a counseled brief:

> POINT I: THE PCR COURT ERRED IN DENYING THE DEFENDANT'S SEVENTH PRO SE PCR PETITION BASED UPON INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> > A. THE INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD.
> >
> > B. THE FELONY MURDER AND ROBBERY CONVICTIONS.
> >
> > C. THE MURDER CONVICTION.
> >
> > D. POSSESSION OF A FIREARM FOR AN UNLAWFUL PURPOSE CONVICTION.
>
> POINT II: THE PCR COURT ERRED BY FAILING TO RULE ON THE DEFENDANT'S MOTION FOR A NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE.

Defendant also raises the following points in a supplemental pro se brief:

> POINT ONE: THE PCR COURT ERRED IN DENYING DEFENDANT'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO INVESTIGATE HIS POTENTIAL ALIBI WITNESSES WHOSE NAMES WERE SUPPLIED TO COUNSEL BY DEFENDANT. THIS VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL AS GUARANTEED BY SIXTH AND FOURTEEN[TH] AMENDMENT[S] TO THE U.S. CONSTITUTION AS WELL AS ARTICLE

9

1 PARAGRAPH 10 OF THE NEW JERSEY
STATE CONSTITUTION.

POINT TWO: THE DEFENDANT-APPELLANT
CONTENDS THAT THE NEWLY DISCOVERED
EVIDENCE WARRANT[S] A NEW TRIAL.

POINT THREE: DEFENDANT-APPELLANT
CONTENDS THAT TRIAL COUNSEL WAS
INEFFECTIVE FAILING TO CALL CO-
DEFENDANT SEAN JONES AS A DEFENSE
WITNESS TO EXCULPATE DEFENDANT FROM
THE ROBB[E]RY AND FELONY MURDER
CHARGES. THIS VIOLATED DEFENDANT'S
RIGHT TO A FAIR TRIAL AS GUARANTEED
BY SIXTH AND FOURTEEN[TH]
AMENDMENT[S] TO THE U.S.
CONSTITUTION AS WELL AS ARTICLE 1
PARAGRAPH 10 OF THE NEW JERSEY STATE
CONSTITUTION.

Since the trial court did not explicitly address prong one of the Strickland test — that is, whether trial counsel was deficient, Strickland, 466 U.S. at 687 — we are constrained to focus our review on the court's conclusion under prong two that, even if trial counsel was deficient by failing to investigate defendant's alibi witnesses, defendant suffered no prejudice. See ibid. Our review of the court's decision, reached after an evidentiary hearing, "is necessarily deferential to [the] court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). We review legal conclusions de novo. Ibid. Applying that standard of review, we discern no error.

Our Supreme Court has recognized that the "[f]ailure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction." State v. Porter, 216 N.J. 343, 353 (2013). "[W]hen a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid. (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). Defendant established at the evidentiary hearing what Brown and Pugsley would have revealed at trial, assuming an investigation would have led to their cooperation.[6]

Brown and Pugsley did not exonerate defendant. "'Alibi' literally means 'elsewhere; in another place.'" State v. Nunn, 113 N.J. Super. 161, 167 (App. Div. 1971) (quoting State v. Mucci, 25 N.J. 423, 431 (1957)). Proof of an alibi, meaning that a "defendant was elsewhere at the time and place of the crime," goes to the heart of the question of whether the State has proved its

---

[6] Neither Brown nor Pugsley described their whereabouts in the months after the crime; nor did they say they would have cooperated with an investigator and would have been willing to testify at trial on defendant's behalf. Also, defendant did not name or describe Pugsley to his trial counsel. At the PCR hearing, he did not present evidence to establish the likelihood that a defense investigator would have been able to identify him as a witness.

case beyond a reasonable doubt. Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1.3 on <u>R.</u> 3:12-2 (2018). The defense is only sustainable where the offered evidence establishes "the physical impossibility of the accused's guilt . . . ." <u>Mucci</u>, 25 N.J. at 431.

Brown and Pugsley established the physical impossibility that defendant shot the street vendor. But, the bar patrons provide defendant no alibi, because the State did not allege that defendant physically robbed and shot the street vendor. The State relied at trial on a theory of accomplice liability, specifically that defendant acted "[w]ith the purpose of promoting or facilitating" Jones's commission of robbery, and ultimately murder, by supplying Jones with a gun, driving him to the scene of the robbery, waiting for him around the corner, and driving him away after the robbery turned deadly. <u>See</u> N.J.S.A. 2C:2-6(c)(1)(b) (defining accomplice as a person who, "[w]ith the purpose of promoting or facilitating the commission of [an] offense," aids another in "planning or committing" it); <u>see also</u> N.J.S.A. 2C:2-6(b)(3) (stating an accomplice is legally accountable for the conduct of another person).

Defendant detailed his involvement in two statements to the police. The statements were admitted at trial, and established his culpability as an accomplice. The bar patrons' testimony

would not have refuted defendant's admissions about his actions before he walked into Hawk's bar, and it would have only bolstered the State's proofs that he was Jones's getaway driver after the shooting. As trial counsel put it, in making those statements, defendant "walk[ed] himself right into a felony murder." Thus, defendant suffered no prejudice as a result of any failure to call the two patrons as witnesses.

Defendant contends in his pro se brief that had Brown and Pugsley testified, they would have probably affected the trial result because they would have discredited a significant prosecution witness. The witness testified that she observed Jones shoot the vendor; run down the street; and enter defendant's white Cadillac. In particular, she testified that she saw Jones drop some money as he ran. As she bent down to pick up what turned out to be three dollars, defendant got out of his car, told her to give it him, and then returned to his car and drove off with Jones.

As a threshold matter, we note that defendant did not raise this argument before the trial court. Therefore, we are not obliged to reach it. State v. Arthur, 184 N.J. 307, 327 (2005). Furthermore, although the two witnesses did not mention defendant's interaction with the woman, PCR counsel did not directly ask Brown or Pugsley about whether they saw defendant

interact with a woman before driving off. It is conceivable that twenty-five years later, the witnesses would have acknowledged the occurrence if their recollection had been refreshed.

In any event, even if the two witnesses definitively stated they saw no exchange between defendant and the woman, we are unpersuaded that would have established a reasonable probability of a different result. Defense counsel vigorously cross-examined the woman, exploring her bias in assisting the prosecution, because she had pending drug charges. Furthermore, the principal evidence against defendant was his own admissions. The State's case was also supported by the testimony of the victim's helper, who testified that he saw two men in a large white car — a Cadillac or Oldsmobile — drive slowly past the vendors shortly before the robbery.[7]

In sum, defendant failed to establish that — even if his attorney provided him with constitutionally deficient representation by not conducting an investigation — it is

---

[7] In his pro se supplemental brief, defendant also continues to argue that his second statement was coerced. Defendant did not raise this issue before the PCR court, and we will not address it on appeal. Arthur, 184 N.J. at 327 (stating "[a]n appellate court ordinarily will not consider issues that were not presented to the trial court"). In any event, the issue is procedurally barred by Rule 3:22-5. We reviewed the denial of defendant's Miranda motion on direct appeal. Morgano I, slip op. at 3. We concluded the trial court's ruling was supported by sufficient credible evidence in the record, and affirmed his conviction. Ibid.

reasonably probable that the result of the trial would have been different. Strickland, 466 U.S. at 687.

Defendant also raises two arguments on appeal that the trial court did not address. He contends that trial counsel was ineffective for failing to call Jones as a witness, and that Pugsley's testimony is newly discovered evidence that entitles him to a new trial. Based on a review of the record it is apparent defendant raised the issues before the PCR court. Rather than remand for a determination of the issues, we exercise our original jurisdiction to decide them. See R. 2:10-5.

Defendant contends that his trial attorney was ineffective for failing to call Jones as a witness. "[A] defense attorney's decision concerning which witnesses to call to the stand is 'an art' . . . ." Arthur, 184 N.J. at 321 (quoting Strickland, 466 U.S. at 693). As such, our review "should be 'highly deferential.'" Ibid. (quoting Strickland, 466 U.S. at 689). Trial counsel testified that he chose not to call Jones as a witness, even though he was willing to testify, because "[his testimony] would have implicated [defendant]." Indeed, in Jones's statement to police, he alleged that the robbery was defendant's idea, the gun was defendant's, and defendant participated in the robbery as well as the flight from the scene.

It was reasonable trial strategy for trial counsel not to call Jones as a witness. Even if he recanted his prior statement to police and attempted to exonerate defendant, his testimony would have opened the door to the introduction of his prior inculpatory statement — in which he alleged that the robbery was defendant's idea. N.J.R.E. 803(a)(1); see State v. Carabello, 330 N.J. Super. 545, 556 (App. Div. 2000) (stating N.J.R.E. 803(a)(1) "allows the admission of a witness's inconsistent statement as substantive evidence"). Absent Jones's appearance, that statement was inadmissible hearsay. N.J.R.E. 802 (hearsay rule); see also State v. Weaver, 219 N.J. 131, 151-52 (2014) (stating the Confrontation Clause does not allow otherwise admissible hearsay that is "testimonial in nature" to be admitted if the declarant does not testify).

For the very reason that it was not constitutionally deficient to forgo calling Jones as a witness, it was not reasonably probable that his testimony would have changed the result. See Strickland, 466 U.S. at 687. Jones's appearance at trial was as likely to hurt defendant as help him.

Defendant also argues Pugsley's testimony is newly discovered evidence that warrants granting him a new trial. See R. 3:20-2. We disagree, because the testimony would not alter the verdict at a new trial.

16

It is well-settled that newly discovered evidence sufficient to warrant a new trial must be "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." Nash, 212 N.J. at 549 (quoting State v. Carter, 85 N.J. 300, 314 (1981)). A defendant must satisfy all three prongs to gain relief. State v. Ways, 180 N.J. 171, 187 (2004).

The central focus of the analysis is on the nature of the evidence presented. Id. at 191-92 ("The power of the newly discovered evidence to alter the verdict is the central issue, not the label to be placed on that evidence."). In that way, prongs one and three of the test are "inextricably intertwined." Nash, 212 N.J. at 549. Evidence that is merely cumulative, impeaching, or contradictory "is not of great significance and would probably not alter the outcome of a verdict." Ways, 180 N.J. at 189. However, "[m]aterial evidence is any evidence that would 'have some bearing on the claims being advanced.'" Id. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 513 (App. Div. 1991)). "Clearly, evidence that supports a defense, such as alibi, third-party guilt, or a general denial of guilt would be material." Ibid.

Prong two "requires that the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence." Id. at 192. In this evaluation, a court should consider the strategic decisions of trial counsel. Ibid. ("A defendant is not entitled to benefit from a strategic decision to withhold evidence.").

Here, defendant has offered only cumulative evidence that he was in a bar at the time of the shooting, a fact already established by the State's proofs. As we have already discussed, Pugsley is not an alibi witness. His testimony is not material, and it would not change the verdict at a new trial. The jury was not tasked with determining whether defendant shot the street vendor. The issue at trial was whether defendant was Jones's accomplice. Except for the possibility that Pugsley could have contradicted the State's female eyewitness, Pugsley's testimony does nothing to undermine the State's case. However, for the reasons already stated, that contradiction — even if we presume it in the absence of Pugsley's explicit testimony — would not probably change the result if a new trial were granted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3527-14T1